THE TROY AND BOSTON RAILROAD COMPANY *vs.* THE PRESIDENT, &C. OF THE NORTHERN TURNPIKE COMPANY.

It was the intention of the legislature, by the act of 1851, relating to railroad corporations, to apply the provisions of the general railroad act of 1850, so far as they relate to proceedings for the purpose of obtaining title to lands, to the corporations mentioned in the 3d section of the act of 1851.

Accordingly *held* that a railroad company, having obtained the appointment of commissioners, under the 3d section of the act of 1851, has the right to *appeal* from the award made by them.

Commissioners of appraisal should be guided, in their proceedings, by the established rules of evidence. No testimony should be received which a court of law would reject; and none should be rejected which a court of law would hold to be admissible.

In the exercise of the discretion vested in the court, upon appeal from an award of commissioners, it will not interfere with their proceedings, unless satisfied that some substantial error has been committed.

An award of commissioners will not be set aside, for every technical error, in respect to the admission or rejection of evidence. The error should be of such a character as to show that the commissioners have misapprehended the principles upon which they were to make their appraisal, and that the party appealing may have been injuriously affected by such misapprehension.

Where the inquiry before the commissioners is, what compensation should be made to a turnpike road company, for granting to a railroad company an easement, or right of way, across their road, any proof having a legitimate bearing upon that question, and which, by the established rules of evidence, would be received in a court of law, should be received; and all other proof should be rejected.

It should be assumed that the railroad company will, as required by law, restore the turnpike to such a state as not necessarily to impair its usefulness.

The consideration that the business of the turnpike will be diminished by the construction of a railroad along the same general line of travel, should be disregarded.

The opinions, or conjectures, of witnesses, as to the effect the use of the railroad will produce in frightening horses traveling upon the turnpike, at a particular place; or as to the necessity for diverting the line of the turnpike, at another place, and the cost of such diversion; or that a bridge ought to be built by the railroad company at a crossing; or as to the amount of damages the turnpike company will sustain by reason of the crossing of their road, are inadmissible in evidence.

APPEAL. from the appraisal and report of commissioners. The track of the Troy and Boston railroad crosses the Northern Turnpike four times. Once near the village of Lansingburgh,

at a place called Oil Mill Hill, and three times in the town of Pittstown. At the Oil Mill Hill, it crosses at a grade *seven inches* lower than the turnpike. The *second* crossing is about 17 miles from Troy. There, the railroad company have changed the line of the turnpike for the distance of 754 feet. The new line is 34 feet longer, and of an easier grade. The railroad crosses the turnpike, at this place, upon a bridge 24½ feet wide, and 20 feet high. The *third* crossing is about a mile still further on, at an angle of 45 degrees, and about *eight feet* below the surface. The grading of the turnpike each way is about 150 feet, at a grade of about five feet to the hundred. The *fourth* crossing is about half a mile north of the third. It is about *eleven* feet below the surface of the turnpike. The grading is about 200 feet each way from the track, and the grade five feet to the hundred.

For the purpose of acquiring the right to make these crossings, the railroad company presented their petition and procured the appointment of commissioners, pursuant to the 15th section of the railroad act of 1850. (*Sess. Laws of* 1850. *p.* 218.) The commissioners awarded to the turnpike company the sum of $2500. From this award the railroad company appealed, pursuant to the 18th section of the act. Upon the hearing before the commissioners the turnpike company were allowed to prove that " there would be danger of horses, when passing along the new turnpike made at the second crossing, sheering off from the embankment, and, by another witness, that going north, on the new road, there would be danger, when the cars were coming, of horses being frightened off the embankment.

In respect to the Oil Mill Hill crossing, the turnpike company were allowed to prove that, when coming down the hill with a loaded wagon, it would be difficult to check the team, if the cars came in sight, so as to prevent all danger of collision ; also, that it would not be safe to leave the turnpike as it then was, where the railroad crosses it, and that to make it safe, after the railroad should be constructed, it would be necessary to alter and divert the turnpike in the manner represented on a diagram produced before the commissioners, and that the expense of thus

diverting the road would be $7350. The turnpike company were also allowed to prove that, where a rail road crosses a turnpike, at a cutting of eight feet or more, a bridge would be necessary, in order to restore the turnpike to its former usefulness; also, the amount of the capital stock of the turnpike company, and the amount of its receipts for the year previous; also, the annual expense of keeping the turnpike in repair; also, the opinion of witnesses that the amount of damage to the turnpike company, by reason of the several crossings, would be equal to one-third or one-half the value of the road; that its earnings would be diminished in that proportion.

All the testimony above stated was objected to by the counsel for the railroad company, and received by the commissioners, notwithstanding such objection.

*A. K. Hadley*, for the appellants.

*J. Pierson*, for the respondents.

*By the Court*, HARRIS, J. The railroad company obtained the appointment of commissioners, under the 3d section of the act of 1851, relating to railroad corporations. (*Sess. Laws of* 1851, *p.* 20.) That section provides, that upon the appointment of such commissioners, " all subsequent proceedings may be had to obtain the title to lands, to the same extent, and in the same manner, as if the whole amount of the capital stock, &c. had been subscribed;" in other words, the proceedings are to be in conformity with the provisions of the railroad act of 1850.(*a*) It is contended by the counsel for the turnpike company, that this section does not confer upon the railroad company the right to appeal from the award of the commissioners. But I think it was the intention of the legislature to apply all the provisions of the act of 1850, so far as they relate to proceedings for the purpose of obtaining the title to lands necessary for the construction of the road, to the corporations mentioned in the third section of the act of 1851. The proceedings are to be had " to

(*a*) *Laws of* 1850, *p.* 211.

Troy and Boston Railroad Co. *v.* Northern Turnpike Co.

the same extent and in the same manner," &c. This language may, I think, be fairly construed to embrace an appeal from the award of the commissioners, as well as the proceedings to obtain such award.

The important question which this case presents is, upon what principle the court should proceed in reviewing the proceedings of the commissioners, upon appeal. No rules are prescribed in the act, to govern the court in its review. It is merely declared that on the hearing of the appeal, the court may direct a new appraisal, before the same or new commissioners, *in its discretion*. In the exercise of this discretion, no court, probably, would feel called upon to interfere, unless it should be satisfied that some substantial error had been committed. Commissioners, in their proceedings, ought to be guided by the established rules of evidence. No testimony should be received, which a court of law would reject, and none should be rejected, which a court of law would hold to be admissible. (*See Rochester and Syracuse Railroad Co.* v. *Budlong*, 6 *How. Pr. Rep.* 467.) And yet the award should not be set aside, for every technical error in this respect. The error should be of such a character as to show that the commissioners have misapprehended the principles upon which they were to make their appraisal, and that the party appealing may have been injuriously affected by such misapprehension. "The general rule is admitted," said Nelson, Ch. J., in *Lincoln* v. *The Saratoga and Schenectady Railroad Company*, (23 *Wend.* 432,) "that witnesses must speak as to facts, and facts too within their own personal knowledge. Opinions, belief, deductions from facts, and such like, are matters which *belong to the jury*, and by which they arrive at their verdict. When the examination extends to these, and the judgment, belief and inferences of a witness are inquired into, as matters proper for the consideration of a jury, their province is in a measure usurped : the judgment of witnesses is substituted for that of the jury." A faithful adherence to this cardinal principle in the law of evidence cannot be insisted upon too rigidly. In the legal investigation of truth, no other rule is safe. Conjecture, speculation, inference, deduction, opinion, belief, every

thing, except what witnesses can state of their own personal knowledge, so far as it may be resorted to at all, must be confined to the tribunal whose province it is to decide upon questions of fact. The only exception to this general rule is, that " on questions of skill and judgment, men of science and experience are allowed to give their opinions in evidence." Such men are allowed to state, as the result of their own study, or their observation and experience, their conclusions upon a given state of facts. To the principle of this exception may be referred the rule which permits witnesses to state their opinion as to the value of property. A witness who has a personal knowledge of any property in question, and from his own observation and experience has become acquainted with its value, may give in evidence his opinion on that question. It is because he is able to speak with more understanding than others. Indeed, it would not be a very gross perversion of terms to say, that the value of an article of property, as estimated by such a witness, is rather a matter of fact than opinion.

If the commissioners, in deciding upon the admission or rejection of the evidence offered by the parties, were to be guided by these principles, as I think they were, it is clear that they have erred to an extent which ought not to be disregarded. The opinions, or rather conjectures of the witnesses, that horses might be frightened off the new embankment made by the railroad company where they had changed the line of the road, at the second crossing, ought not to have been admitted in evidence. The inquiry itself was improper. It had nothing to do· with the compensation to which the turnpike company were entitled. The railroad company were bound to restore the turnpike " to its former state, or to such a state as not unnecessarily to impair its usefulness." If it should fail to discharge this duty it might form the subject of an action, or other legal proceedings, against the railroad company, but it was not for the commissioners to inquire whether this duty had been or was to be performed.

The same is true of the evidence in relation to the crossing at the oil-mill hill. Witnesses were allowed to testify that, in their opinion, it would be necessary, for the sake of safety, to

divert the line of the turnpike so as to descend the hill in another place, and that such diversion would cost $7350. If this was, in fact, necessary, the railroad company was bound to do it, and it was no part of the duty imposed upon the commissioners, to inquire whether they would do it or not, nor even whether it would be necessary. And besides, if it had been a legitimate subject of inquiry, the views of the witnesses, on the subject, would furnish no proper evidence upon which to determine the question.

For the same reasons, the commissioners improperly received evidence to show that, where the railroad company crossed the turnpike by a cutting of eight feet or more, a bridge ought to have been made by them. They should have assumed that the crossing would be effected in the proper manner, and that the railroad company would do all that they were required by law to do, for the purpose of restoring the road to its former usefulness.

So, too, the proof in relation to the amount of the capital stock of the turnpike company, and its income and expenses, was wholly irrelevant, and should not have been received. The opinions of witnesses as to the amount of damages the turnpike company would sustain, by reason of the several crossings, was still more objectionable. Opinions as to damage or loss are never admissible, even when such damage or loss is the ground of action. It is the business of the jury, or other tribunal to which the decision of the question is referred, to determine, from facts proved, and not the opinions of others, what damage or loss has been sustained. (*Giles* v. *O'Toole*, 4 *Barb.* 261. *Harger* v. *Edmonds, Id.* 256. *Rochester and Syracuse Railroad Company* v. *Budlong, above cited.*)

The commissioners were to ascertain and determine what compensation ought justly to be made to the turnpike company for granting to the railroad company an easement, or right of way, across their road, at the four places specified. Any proof having a legitimate bearing upon this question, and which, by the established rules of evidence, would be received in a court of law, in a case involving a similar inquiry, should have been received. All other proof should have been rejected. It should have been

Troy and Boston Railroad Co. *v.* Northern Turnpike Co.

assumed that the railroad company would, as required by law, restore the turnpike to such a state as not unnecessarily to impair its usefulness. The consideration that the business of the turnpike would be diminished by the construction of a railroad along the same general line of travel, should have been disregarded. It is quite probable that the income of the turnpike company will be diminished, perhaps to the extent predicted by the witnesses. This we may regret, but it does not constitute a legitimate element in the compensation, for which the railroad act provides. Every public improvement, from the necessity of the case, must affect some property favorably, and some unfavorably. When this effect is merely consequential the injury is *damnum absque injuria.* No vested rights have been violated. The turnpike company still enjoy all the rights and privileges secured to them by their charter. Their property has undoubtedly been depreciated by the construction of the railroad. Greater facilities are provided for the conveyance of property and passengers, and thus, it may be expected, the business of the turnpike will be seriously affected. But this does not furnish a legal ground of remuneration. It is but a part of the price which the members of society pay for the advantages they derive from the social condition. Individual convenience must yield to the general good.

So far as the railroad company had occasion to take the real estate of the turnpike company, so far they were bound to make compensation; the same compensation which another turnpike company, or a plank road company, would be required to make, for the same right to cross the turnpike. The amount of this compensation was the only question properly before the commissioners. As they have not confined themselves to this inquiry, but have allowed testimony to be given upon other questions, not legitimately before them, and which may have affected their award, I think the report should be set aside, and that there should be a new appraisal by the same commissioners.

[ALBANY GENERAL TERM, December 6, 1852. *Parker, Wright* and *Harris,* Justices.]