# APPEAL OF THE NORTH BEACH AND MISSION RAILROAD COMPANY IN THE MATTER OF WIDENING KEARNY STREET.

STREET RAIL ROAD IS PROPERTY.—The interest in the street of a street railroad company authorized by statute to lay down a track in the streets of a city and run cars over it for the conveyance of passengers for hire, is an easement in the land; and the estate of such company in the street is real property.

STREET RAILROAD—ITS VALUE.—The estate of such street railroad company in the streets of the city is property capable of being enhanced in value by the widening of the street, and by such widening a substantial benefit may accrue to the railroad company.

CONSTRUCTION OF STATUTES.—In construing statutes the object to be accomplished by the Act is to be ascertained, and its provisions considered, and so construed, if possible, that all its parts may have effect and operate harmoniously to effectuate that object.

CONSTITUTIONALITY OF ACT FOR WIDENING STREETS.—The Act of April 4th, 1864, giving power to the Board of Supervisors of San Francisco to widen streets, etc., does not prescribe a rule for the apportionment of the expenses of the improvement for the owners of lots deemed benefited different from that prescribed for railroad corporations benefited, and it is not, therefore, in this respect unconstitutional.

IDEM.—Said rule for the apportionment of expenses is, in both cases, according to the ratio of benefits received.

QUESTIONS CONSIDERED ON APPEAL.—Upon an appeal from a judgment of the County Court confirming the report of Commissioners in apportioning the expenses of widening a street according to the benefits received, it is unnecessary to consider the questions arising upon the proceedings for collecting the assessment made for such expenses, or whether the amount assessed is properly made a lien on property, or whether the mode of enforcing payment of the assessment is constitutional.

ERROR TO BE SHOWN BY RECORD.—Upon an appeal from a judgment of the County Court confirming the report of Commissioners apportioning expenses for widening a street among lot owners and railroad corporations, unless the record shows a different state of facts, the presumption under the provisions of said Act, is, that such expenses were apportioned according to the benefits received by each.

IDEM.—All presumptions under the express provisions of the Act are in favor of the correctness of the action of such Commissioners. It devolves on one objecting to the confirmation of their report to show error.

APPEAL from the County Court, City and County of San Francisco.

The facts of this case are stated in the opinion of the Court.

Some general facts as to the widening of Kearny street are stated in the *Appeal of Piper, post.*

*W. W. Crane, Jr.,* for Appellant.

The appellant, the North Beach and Mission Railroad Company, is a corporation having the right to lay down rails in Kearny street, and use them for the purpose of a street railroad for the conveyance of passengers. It has a mere easement or right of way over the street, and is not in any sense the owner or occupant of any houses, lots, or lands upon such

street, or in the district of territory within the city deemed by the Board of Supervisors to be benefited by the widening of Kearny street.   (Laws of 1861, p. 193; *Hooker* v. *Utica and Minden Turnpike Co.*, 12 Wend. 371; *People* v. *White*, 11 Barb. 26; *Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co.*, 33 Barb. 420; *Blake* v. *Rich*, 34 N. H. 282; *Weston* v. *Foster,* 7 Metcalf, 297; *Giesy* v. *C. W. and Z. Railroad Co.*, 4 Ohio S. 325.)   The Act is unconstitutional and void, so far as it affects the appellant, because section seven of the Act (Laws 1863–4, p. 360) authorizes the Commissioners of appraisal and assessment to assess such portion of the costs, damages, and expenses upon appellant " as shall to them seem equitable and just," while as to all other persons they can only assess the particular property supposed to be benefited " in proportion to the benefit which each shall be deemed to acquire."   The Act in question is general in its nature, though only made applicable to the City and County of San Francisco.   (Constitution, Art. I, Sec. 11; *Pierce* v. *Kimball*, 9 Greenl. 56; *Burnham* v. *Webster*, 5 Mass. 265; *Jenkins* v. *Union Turnpike Co.*, 1 Caines' Cases, 93; *Bank of Utica* v. *Snieders*, 3 Cow. 684; *The Commonwealth* v. *Inhabitants of Springfield*, 7 Mass. 9; Smith's Commentaries, Sec. 797; Laws of 1863–4, p. 355, Sec. 21.)   It is not uniform in its operation.   (*People* v. *Naglee*, 1 Cal. 252; *People* v. *Coleman*, 4 Cal. 55; *Smith* v. *Judge of Twelfth District*, 17 Cal. 554; *Lathrop* v. *Mills*, 19 Cal. 533; *French* v. *Teschemaker*, 24 Cal. 544.)   It in fact levies a general tax upon all the property of the corporation, and is not an " assessment " as defined by this Court.   (*Emery* v. *S. F. Gas Co.*, 28 Cal. 346; *Emery* v. *Bradford*, 29 Cal. 75; *Taylor* v. *Palmer*, 31 Cal. 240°; *State* v. *City of Newark*, 3 Dutcher, 186.)   If a tax, it is not uniform nor in proportion to the value of the company's property as ascertained by law.   It in effect authorizes the taking of appellant's property without due process of law.   The Act is also unconstitutional, because the first section authorizes the owners and occupants of the houses, lots, and lands situated within the portion of the city adjudged to be benefited, to

appear before the Board of Supervisors and be heard upon allegations either for or against the proposed improvement, while appellant not being an owner or occupant of land, was prevented by the terms of the Act from so appearing. (Acts 1863–4, p. 348; *Doubleday* v. *Newton*, 9 How. Pr. 71; *Peters* v. *Newkirk*, 6 Cowen, 103; *Chase* v. *Hathaway*, 14 Mass. 222; *Elmendorff* v. *Harris*, 23 Wend. 628.)

There is but little practical difficulty in ascertaining the amount to be imposed upon the property adjoining a local improvement. The Commissioners are first called upon to estimate the benefit that will accrue to the particular parcel of land and then to assess upon it damages in proportion to that benefit, but when these officers propose to make an assessment upon a railroad corporation, it is found impossible to keep within the constitutional limitations. Take the facts in the case at bar, as an illustration. Here is a horse railroad, one terminus at the north end of San Francisco, and the other at the south, while along the surface of the street proposed to be widened there is laid only, say one fifth of the entire length of its track. Confessedly, the corporation has no property in or upon the street, except, perhaps, the iron rails over which the cars run. Its right in that particular street is merely a right of way and easement. A right in no way superior to that of every citizen, and only to be distinguished from the right which the owner of every vehicle in the city has, because of the particular mode of its use by the railroad corporation. As was held in the case of the *Brooklyn Central and Jamaica Railroad Company* v. *the Brooklyn City Railroad Company*, 33 Barbour, 420, a horse railroad laid down in the streets of a city and conducted in the usual manner, is not an additional easement or burden imposed upon the land which will entitle the owner of the soil to compensation in damages. And as the Court says:

" The Jamaica Company are not, and never were the owners of the soil. Their rights were those of passage—a mere easement, and if the laying down of the rails of another com-

pany in the same street, and the running of horse cars thereon, should be deemed and held to be another easement, how could the Jamaica Company complain, so long as its right of passage over the street remained uninterrupted."

There is, therefore, in Kearny street, upon the line of the improvement, no property to assess. Admitting that the iron rails can be assessed, and sold in case of non-payment, the purchaser thereby acquires no right as against the company to use them upon the street. He must take them up, and the corporation can the next day put down others. In short, the company's franchise is an entirety, the right of way through certain streets between two termini which is not susceptible of severance without the consent of the Legislature and the company. (*Arthur* v. *Commercial and Railroad Bank*, 9 Smede & M. 394.) These impediments to an assessment within the limitations of the Constitution undoubtedly presented themselves to the minds of the person or persons who drafted the bill and to the Legislature which passed it, and as it was self-evident that no estimate of benefits could be made, as to the particular section of iron rails within the district that might be adjudged to be benefited, it was sought to avoid the difficulty by permitting the Commissioners to assess upon the corporation at large such sum as to them should appear to be equitable and just. If this be the true solution of the discrimination in the mode of assessment permitted to be made by section seven of the Act, then it cannot with propriety be urged that an assessment " in proportion to the benefit," and such a one as " shall seem equitable and just " are the same, or that the terms are convertible, or that the latter has by necessary or reasonable construction the same meaning or limitation as the former.

*A. Campbell*, for Respondent, the City and County of San Francisco.

A franchise is property. The corporation owns property. For a long distance its track passes through a widened thor-

oughfare, on which the travel must be greatly increased, bringing a corresponding increase of profits to the company. It would require a most inflexible rule of law to establish a right of exemption in this property from contributing to an assessment for public improvement which so greatly enhances its value and profits; and we contend that no such rule has been shown. The authorities show and approve of a far higher exercise of power than we here contend for. This very franchise, if required for any great public improvement, can itself be taken, as any other property can be taken. (Peirce on Am. Railroads, 151, 152, and cases there cited.) The Court saying (note to 152), "We are aware of nothing peculiar to a franchise which can class it higher or render it more sacred than other property. A franchise is property, and nothing more." The whole property of this corporation, and the very franchise itself, is within the territorial limits of the Board of Supervisors, and if they believe it to be benefited, they can assess it. (*Emory* v. *San Francisco Gas Company*, 28 Cal. 345; 4 Comstock, 419.) It is said that the Act is unconstitutional because the assessment on appellant is not on the same basis as on the owners of the lot, etc.; the one being "just and equitable," the other "in proportion to benefits." We contend that the same rule of assessment is laid down in this case as in all others by the Act itself, and no other. That the whole Act is to be read to ascertain the true construction of each of its parts. That a single section or fragment of a section cannot be selected and a construction placed on it which ignores the very existence of many other sections, and is inconsistent with the very essence and spirit which pervades every other part of the Act.

By the Court, SAWYER, J.:

Proceedings for widening Kearny street, in the City of San Francisco, were taken by the Board of Supervisors of the City and County of San Francisco, under the Act of 1864. (Laws 1864, p. 347.) By the provisions of this Act the Board

of Supervisors were authorized to make the improvement, and assess the expenses of the work upon the owners and occupants of houses and lands, railroad corporations and companies that might be benefited thereby; and the authority to determine what portions of the city and county, and what railroad corporations and companies would be benefited by the improvements, and which should, therefore, be required to pay the expenses, was also conferred upon the Board. (Secs. 1, 2, 5 and 16.) Under these provisions the district to be benefited was duly determined; and it was also determined that appellant, the proprietor of a street railroad extending through the whole length of that portion of Kearny street to be widened, would be benefited, and should be required to pay a portion of the expenses. The Commissioners appointed to apportion the expenses among the parties deemed benefited, assessed the sum of twenty thousand dollars upon appellant, as its just portion. Objections to the report of the Commissioners, on various grounds, having been made, they were overruled, and the report confirmed by the County Court. This appeal is from the order of confirmation.

The principal questions to be determined are:

Firstly—Whether the appellant has any property, estate or interest within the district deemed benefited?

Secondly—If so, whether such estate is capable of being enhanced in value by the proposed widening of Kearny street, and whether by means thereof any substantial benefits can accrue to the company?

Thirdly—Whether the statute prescribes or authorizes a different rule of apportionment of the expenses of the work, with respect to appellant and other corporations and companies, from that applied to owners of lands within the district?

Fourthly—Whether the Commissioners apportioned the amount among the owners of lands and the appellant according to the benefits received by each?

Under the Act of April 17th, 1861 (Laws 1861, p. 193,) the

64

appellant acquired the " right of way whereon to construct and lay down a railway track within the corporate limits of the City and County of San Francisco, and to run horse cars thereon " through certain designated streets, embracing the whole of that portion of Kearny street proposed to be widened, and extending in each direction a considerable distance beyond. It was authorized to lay down a track for its cars to run upon, and to receive five cents fare from each passenger for any distance carried in said cars. This right of way is, at least, an easement in said street. So much is admitted by appellant's counsel. But an easement is property, recognized as such by law—and one of the kind in question, very valuable property. It is an incorporeal hereditament, but it is still a tenement and an interest in the land. "An easement always implies an interest in the land in or over which it is to be enjoyed. A license carries no such interest. The interest of an easement may be a freehold, or a chattel one, according to its duration." (Wash. on Easements, 5, par. 5.) " An easement must be an interest in, or over the soil." (Per Cresswell, J., in *Rowbotham* v. *Wilson*, 8 Ellis and B. 157.) "A right of way is an assignable property. It is a real, or chattel interest, according to the term of its duration, and the former is well known in the law as that sort of real property belonging to the class of incorporeal hereditaments." (*Ex parte Coburn*, 1 Cow. 570 ; *Heaton* v. *Ferris*, 1 John. 146.) It is real property, and it is created by grant. An easement is an estate or interest in land within the Statute of Frauds requiring contracts affecting real property to be in writing. (*Wolfe* v. *Frost*, 4 Sand. Ch., 89 ; *Foster* v. *Browning*, 4 R. I. 51.) By Act of Parliament (10 Ann,) certain parties were " authorized and empowered at their proper costs and charges to make the river Avon, from the City of Bath down to and within the Millpool or Wearpool, below Harmon Mills and Wear, not exceeding one hundred and fifty yards, navigable, useful and passable for boats, lighters and other vessels," and to take certain tolls from those navigating the said portion of said river. (*Buckeridge* v. *Ingram*, 2 Ves.

Jr. 654.)   The interest of the parties in the soil of that portion of the river is but an easement similar to that acquired by the appellant in this case.   Yet shares in the improvement were held to be real estate and subject to dower.   The Master of the Rolls, citing Lord Coke, says: " And according to that passage every hereditament which in any degree arises out of land, affects the same, or is exercisable within the same, has all the properties that belong to real estate.   *   *   *   When we come to try the question by the test of that definition, it would be strange to say the right of making all these cuts and erections, and receiving certain tolls, payable by all persons and goods navigating that part of the river, does not savor of realty.   It not only does, but it partakes of it; it is not the soil, which I hold would hardly pass to the grantee, but it is a right arising out of the soil.   The land itself includes every profit that can be made out of land.   Therefore this Act cannot be construed to have taken out of the proprietors and given to this corporation the soil; but it has given them the right in and over the soil and certain rights arising in and out of the soil.   *   *   *   I have no difficulty in saying that whenever a perpetual inheritance is granted, which arises out of lands or is in any degree connected with—or, as it is emphatically expressed by Lord Coke, exercisable within it— it is that sort of property the law denominates real, and cannot pass by a will without three witnesses." (Id. 633.)   Having determined the interest to be real estate, he held the shares subject to dower.   " The whole estate of the Chesapeake and Ohio Canal Company, at least so far as it consists of the canal itself and its necessary buildings and the fixtures attached to them, must, according to the common law, be regarded as realty."   (Binney's Case, 2 Bland Ch. 145.) When a party conveys land bordering upon a navigable river upon which a ferry is established, but excepts therefrom his right to hold and maintain the ferry, the ferry right does not pass, and it is real estate, " and subject to the laws which govern realty."   (Bowman's Devisees v. Wathen, 2 McLean, 385, 388.)   " The statute of Indiana recognizes the

right of proprietors of lands on the margin of the river, and to none others can ferry rights be granted, and it is supposed that this limits the right to the grantee of the soil. But this construction cannot be sustained. By the statute nothing more could have been intended than to rescue from violation, the right of the riparian proprietor. This right is appurtenant to the soil; but he may convey it, and still retain the fee in the land. And, by such conveyance, the grantee holds the right which the statute was designed to protect. He has the use of the soil for a ferry landing and for ferry ways, so far as the public accommodation is concerned, as fully and completely as could be exercised by the grantee of the soil; but for no other purposes has he a right to enter upon the soil. Now it must be presumed that the right thus possessed is as much within the policy of the statute, as if it were a fee simple in the soil. Indeed, it is within the letter of the statute. For the grantee of such a right may, in the strictest sense, be considered for all the purposes of the ferry, 'the proprietor of the land on the margin of the river.' This right, as before remarked, is real estate. It descends to heirs as such, is subject to dower, and to all the incidents of real property." (Id. 389, 390.)

The statutes of Rhode Island provide, that : " The Assessors of taxes in the several towns, in assessing taxes for real estate, may assess the same either upon the owners of the real estate or upon the persons who hold or occupy the same." (*Providence Gas Co.* v. *Thurber*, 2 R. I. 21.) Under this provision the Providence Gas Company was assessed for its gas pipes laid in the streets of the city, valued as real estate at fifty thousand dollars (Id. 15.) The gas pipes having been permanently attached to the soil and united to the easement of the company in the land, were held to become a part of the realty and to be properly taxed as real estate. The Court say : " If these pipes had been laid in the land of an individual by parol license, they would not become fixtures thereby. But if the owner had granted by deed the right in fee to lay pipes through his land, they would be fixtures because the

annexation would be under legal title " (Id. 23.)   After some
further discussion it is said : " What, then, is the nature of
the right which plaintiffs take under their charter ?   We think,
when exercised, it is an easement—an incorporeal heredita-
ment, like the right of a railroad company to build and occupy
their road, or a canal company their canal, under the provi-
sions in their charter which grant the power to take the land
upon rendering compensation to the owners " (Id. 24.)   And
again : " But the tax has not been assessed upon the plaintiffs
as occupants of the land by their pipes, etc., but upon their
pipes as real estate.   And these pipes, being annexed to the
freehold, and the gas company having an easement in fee, or
a right so to annex and use them, we think they are fixtures,
and rightfully assessed as real estate."   (Id. 26 ; see also cases
cited.)   So, also, the Providence and Worcester Railroad
Company owned " in fee an easement in certain real estate in
said town, said estate so owned by said company being the
location, sleepers, rails and bridges, etc., of the P. and W.
Railroad," lying within the limits of the charter.   Under the
same Act this property was assessed as real estate, and the
question was, whether it was liable to be assessed.   The Court
say : " We have no doubt the easement of the plaintiffs and
their rails, sleepers, bridges, etc., are real estate, and subject
to taxation within the decision of the Court in the case of
*Providence Gas Co.* v. *Thurber*, unless exempted by Sec. 28,"
etc.   The property was held not to be exempt under that
section, and properly taxed as real estate.   (*Prov. and W. R.
R. Co.* v. *Wright*, 2 R. I. 462.)   So in New York, under the
general statutes requiring " all real and personal estate " to be
assessed for taxation at its full and true value, land occupied
by the road, the superstructure and other fixtures are taxed as
real estate, in all respects like other lands.   (*Alb. and Sch. R.
R. Co.* v. *Osborn*, 12 Barb. 225 ; *Alb. and West Stockbridge
R. R. Co.* v. *Town of Canaan*, 16 Barb. 247.)   The same is
true of Illinois.   (*Sang. and Mor. R. R. Co.* v. *County of Mor-
gan*, 14 Ill. 166.)

The question in this case, also, has reference to a species of burdens levied for local purposes under the taxing power.

A turnpike company has but an easement in the soil, yet it has an estate, a property in it, which can no more be taken for the use of a railroad without compensation than the interest in the soil held by the owner of the fee. When a railroad crosses a turnpike, compensation must be made to the turnpike company. In a case of assessment for damages resulting from the crossing of a turnpike by a railroad, Mr. Justice Harris speaks of the interest of the former as real estate. He says: " So far as the railroad company had occasion to take the real estate of the turnpike company so far they were bound to make compensation." (*Troy and B. R. Co.* v. *North Tpk. Co.*, 16 Barb. 106.) So a railroad company which exclusively uses the road by cars propelled by steam cannot appropriate a public highway, as a part of its road, without making compensation to the owner of the fee of the land upon which the highway is located. This is imposing a new burden upon it beyond the easement already acquired by the public. A new estate is to be carved out, which can only be acquired by the railroad company by contract with the owner of the fee, or by condemnation and payment of compensation under the right of eminent domain. (*Williams* v. *W. T. C. R. Co.* 16 N. Y. 100; *Mahon* v. *N. Y. Cent. R. Co.* 24 N. Y. 659; *Wager* v. *Troy Un. R. Co.* 25 N. Y. 526; *Trustees Pres. So. in Waterloo* v. *Aub. and R. R. Co.* 3 Hill, 569.) In the first case the Court says: " The right of the public in a highway is an easement and one that is vested in the whole public. Is not the right of a railroad company, if it has a right to construct its track upon the road also an easement? This cannot be denied, nor that the latter easement is enjoyed, not by the public at large, but by a corporation, because it will not be pretended that every man would have a right to go and lay down timbers and his iron rails and make a railroad upon a highway. Here, then, are two easements, one vested in the public and the other in the railroad company. These easements are property, and that of the railroad company is valu-

able." (16 N. Y. 108.) And it is property that must be acquired by purchase—by contract with the owners of the fee, or by making compensation in the mode prescribed by law in the exercise of the right of eminent domain. The sovereign power has no authority to convey it as a part of the franchise. By virtue of its franchise it may be endowed by the sovereign power with a capacity to acquire the easement, hold property and exercise the functions with which it is endowed; but it is beyond the power of the Government itself to endow it with the easement—confer upon it the property—the interest or estate in the lands not owned or controlled by the sovereign power. That interest is property as distinct from the franchise, and must come through purchase and payment of the consideration like any other property. So, also, in a recent case in New York, in which the power of the corporate authorities of New York City to authorize certain parties to construct a street railroad in Broadway, the character of the rights and interests of street railroad companies was involved. In speaking of the resolution authorizing the parties to construct the road, the Court say : "Upon its acceptance (if valid,) it became a contract between two parties, binding each to the observance of all its provisions. It was something more than a mere executory contract between the parties. *It amounted also to an immediate grant of an interest, and it would seem of a freehold interest, in the soil of the street to the defendants. The rails, when laid, would become a part of the real estate, and the exclusive right to maintain them perpetually is vested in the defendants, their successors and assigns.* * * * The title to the rails, when permanently attached to the land, and such right in the land as may be requisite for their perpetual maintenance, are therefore granted to the defendants by the resolution. The exclusive use of the rails, when laid for the purpose for which they were designed, would also, as I think, belong to the defendants. Other people might drive across them, and to some extent along them, with ordinary carriages, but they would have no right to run cars upon them for their own convenience or

profit.   Any use which the public could have of them, not
exercised through the defendants' franchise, would depend
upon the fact that the rails would not entirely exclude from
the ground they might occupy the character of a public
street." (*Milhau* v. *Sharp*, 27 N. Y. 620–21.) " The resolu-
tion is therefore void, for the reasons that it purports to create
a franchise which the Common Council had no power to
create; *to vest in the defendants an exclusive interest in the
streets which the Common Council had no power to convey;* and
to divest the corporation of the exclusive control over the
street which has been given to it as a trust for the use of the
public, and which it is not authorized to relinquish." (Ib.
622.)

Thus it appears, that the appellant has acquired an interest
in the soil in Kearny street; that it consists in the location of
the road in the street, its right to lay down rails and attach
them to the soil, and to run its cars over them for profit; its
right to the exclusive use of them and the streets, so far as is
necessary for the purpose, in the mode prescribed; that this
interest is property—an interest in the land—and that it is
real estate, and the rails thus laid down, attached to the soil
and annexed to the easement became themselves a part of the
land—of the estate of the company—and that, in those States
where no special provision is made for taxing this species of
.property in a different mode, it is assessed as real estate in the
same manner, and upon the same principles, as land—as if the
company owned the land itself upon which the track is laid
to the extent of its interest in it.   The interest is local—fixed
to the particular land, the particular street—and cannot be
enjoyed beyond, or independent of that fixed locality.   It is
as immovably established on the particular portion of the
earth as the lot occupied by stores fronting on the same street,
and the estate in the one can no more be enjoyed away and
apart from its fixed locality than the estate in the other; and
the right of the street railroad company to the exclusive con-
trol and enjoyment of its estate in the soil of the street to the
full extent of that estate, is as perfect as the right of the

lessee or owner of the lot fronting on the same street to control and enjoy his estate. The several estates are substantially of the same kind, and are of equal dignity before the law, but one is larger, more extensive than the other. Practically, they differ only in the quantity of interest, not in quality.

Secondly—The first point being established, is the estate capable of being enhanced in value by the proposed improvement; and by means thereof, can any substantial benefit accrue to the appellant? Conceding this question to be a proper one for this Court to determine, it seems clear that it must receive an affirmative answer. The business of the appellant is the transportation of passengers for hire, in its cars, over the street railroad running through the entire portion of the street to be widened, from one part of the city to the other. These passengers are taken up at all points along the line. Its profits depend entirely upon the amount of travel over the road. As the travel in its cars increases or diminishes, the profits of the company increase or diminish; and as the profits increase or diminish the value of the easement—the estate of the company in the street traversed by its cars, and upon which its ability to carry and thereby acquire any profits at all depends—increases or diminishes. Whatever change in any particular street, therefore, will increase or diminish the travel in its cars, must, directly, in the same ratio, increase or diminish the value of its easement—its estate in the particular street in which the change is made, and upon which such increase or diminution depends. It is contemplated by the projectors, that the widening of Kearny street into the most spacious avenue of the city running in that direction will make it the great thoroughfare through the city from north to south—the direction of the greatest travel—and greatly increase the business and enhance the value of property on that street. It must be presumed that the results contemplated, to a considerable extent at least, are likely to be realized; otherwise there would be nothing to justify the city and the property holders of the district to be assessed in incur-

ring the great expense of the improvement. But whether the result anticipated will be realized is not a question for us. The jurisdiction and the duty to determine whether the public wants demanded, and whether the benefits likely to result would be sufficient to justify the expenditure, was devolved by law, under prescribed restrictions, upon the Board of Supervisors. That question they have determined. If the benefits anticipated accrue, it will be owing to the fact that the increased facilities for travel and business on the widened street will attract a much larger number of people into that thoroughfare. The larger the population of a city, the more business of one kind or another is likely ordinarily to be transacted; and the larger the number of people travelling through a business street, the larger the number likely to stop and do business on that street. The more business there is transacted on a given street, the more desirable a location on the street will be, and the greater the rent such a location will command; and the greater the rent a given lot will command, or the greater profit its use will afford, the more valuable will the lot, or any estate in it be. The same principles must operate, and in precisely the same manner, to affect the value of the estate of the appellant in its easement on Kearny street. The more people travelling and frequenting Kearny street, the greater the number likely to ride in the company's cars, and the greater its profits are likely to be—the more valuable the use of the street, and consequently the more valuable appellant's estate in it upon which its profits depend. And this enhanced value—these benefits—as clearly accrue through its estate in the location in the street, as the benefits accruing to the owners of lots bordering on the street result from their estate in the particular locality. Without this easement in the street the increased profits could not accrue. The appellant then has an estate in the street, in respect of which substantial benefits will, or at least are likely to accrue from the contemplated improvement; and it is liable to be assessed for these benefits in the same manner as the owners of other property in respect of which they in like manner receive benefits.

Thirdly—Does the statute prescribe or authorize a different rule of apportionment of the expenses of the work with respect to appellant and other companies and corporations, from that applied to owners of land within the district deemed benefited?

Appellant insists that it does; that the owners of lands are to be assessed in the ratio of benefits received, while companies, like the appellant, are to be assessed arbitrarily in the discretion of the Commissioners, as to them shall seem equitable and just, without reference to benefits likely to accrue, and that the Act is, in this particular, unconstitutional. In construing statutes the object to be accomplished by the Act is to be ascertained, and its provisions considered, and so construed, if possible, that all its parts may have effect and operate harmoniously to effectuate that object. In view of this principle, let us examine the statute under which this proceeding is had. Section one authorizes the Board of Supervisors to open, widen and improve streets, etc., and take private lands for the purpose, etc., and provides that for that purpose "they shall enter in their minutes a resolution or ordinance declaring such determination, containing a description of the lands deemed necessary, and also of that part or portion of said city and county, and those railroad companies and corporations, if any, which they judge will be benefited by said improvement and which ought to bear the expense thereof." (Laws 1864, p. 347.) After an estimate of the expense has been made and reported by the proper officers, if the Board determine to proceed with the improvement, they are to pass an ordinance, "declaring such determination, containing a description of the land deemed necessary to be taken therefor, and also that portion of the said city and county, and those railroad companies and corporations, if any, which will be benefited by said improvement, and upon which the expense thereof is to be assessed." (Id. 348, Sec. 2.)

If all the required lands are purchased, and the whole city and county is deemed benefited, and the expense directed to be assessed on the whole city and county, then the expenses

are to be assessed upon all the taxable property of the city and county, and are to be included in the general assessment roll like other taxes. (Sec. 3.) The fourth section directs a map to be made designating " the part and portion of the said city and county, the corporations and companies as aforesaid, declared to be benefited by the same and to be assessed therefor," etc.

If it be assessed upon a part of said city, etc., a notice designating " the portion of said city and county, corporations and companies so declared to be benefited," stating that the expense, etc., " will be apportioned and assessed upon the owners and occupants of houses, lots, and other real estate, corporations and companies to be benefited thereby, is to be served upon each of aforesaid corporations, companies, owners," etc. (Sec. 5.) Commissioners are to be appointed, sworn, etc., to appraise the damages sustained by taking lands, etc., " and assess the whole amount of such damages upon all the owners and occupants of lands and houses within the territory deemed by the resolution of the Board of Supervisors to be benefited by such improvement, as near as may be in proportion to the benefits which each shall be deemed to acquire by the making thereof;" provided that when any street occupied or used by the track of a railroad company is to be altered or widened, " it shall be lawful for the Commissioners appointed as in this Act provided, and whose duty it may be to make a just and equitable assessment of the whole amount of costs, damages and expenses of such altering or widening among the owners of all the lands and real estate intended to be benefited thereby, to assess such portions of such costs and damages and expenses upon the corporation or company owning or using said railroad track as shall to them seem equitable and just, and such assessment shall be a lien," etc. (Sec. 7.) And the sixteenth section provides that " The expenses of any public improvement herein authorized shall be defrayed by assessment on the owners and occupants of houses and lands, corporations and companies that may be benefited thereby." These are the only provisions affecting

the question now in hand.   Now what is the object, the lead-
ing idea running through all these provisions with reference
to the payment of the expenses of improvements of the kind
indicated ?   Manifestly that those who receive the benefits
shall pay the expenses of the work.   Benefits received is the
basis, and the only basis, upon which the assessment for
expenses is to rest, and be apportioned.   If the improvement
is of so important and beneficial a character to the whole city
and county as in the opinion of the Board of Supervisors it
ought to be a charge upon the city and county, all the taxa-
ble property in the county is to be assessed, and the assess-
ment is to go upon the general assessment roll of the city and
county.   But if the benefits are mostly local, and limited to
but a portion, then the expenses are to be assessed upon the
owners and occupants of the lands, and such railroad corpora-
tions and companies as are deemed benefited, and none other.
A provision for an assessment upon the owners of lands, cor-
porations and companies benefited, necessarily implies that it
shall be in the ratio of the benefits.   No other mode of appor-
tionment of assessment for benefits would be " equitable and
just."   Whenever, throughout the Act, owners of lands and
corporations are mentioned in the same paragraph in connec-
tion with the terms " assessment " and " benefits," these terms
apply to both alike ; and in the proviso of the seventh section,
where owners of land and companies are mentioned again in
the same paragraph, and the phraseology is changed, the
terms " just" and " equitable" are used with reference to
both.   " It shall be lawful for the Commissioners   *   *   *
whose duty it may be to make a just and equitable assessment
[not in terms an assessment in proportion to benefits]   *   *
among the owners of all lands and real estate intended to be
benefited thereby, to assess such portions of such costs   *   *
upon the corporation or company owning or using said rail-
road track as shall to them seem just and equitable."   The
Legislature, in the first part of this provision, speaks of the
duty of the Commissioners " to make a just and equitable
assessment" among the owners of lands to be benefited.   But

it is nowhere else provided in the Act in express terms, that they shall make a "just and equitable" assessment among the owners of the lands to be benefited, but in the body of the section preceding the proviso, it is expressly provided that they "shall apportion and assess the whole amount * * * upon the owners and occupants of lands and houses * * * as near as may be in proportion to the benefit which each shall be deemed to acquire by the making thereof." This is the rule of apportionment expressly prescribed, and yet in the proviso to the same section the Legislature speaks of "the Commissioners, whose duty it may be to make a just and equitable assessment among the owners of all the lands and real estate intended to be benefited thereby." The duty is prescribed in the body of the section in the language before cited. These two clauses cannot, therefore, be construed as indicating two different principles of assessment to be applied to the same parties, the owners of lands; for that would make them inconsistent. The two forms of expression, then, were used by the Legislature as synonymous, and that body has itself defined the terms "just and equitable," as used in the Act, to be "as near as may be in proportion to the benefits which each shall be deemed to acquire by the making" of the improvement; and having defined these terms, there is no reason to suppose that the same words transposed—"equitable and just"—used in the same paragraph, in connection with the same subject matter, as applied to the owner of a street railroad, were used in a different sense, and a sense, too, not in harmony with the general idea and object so repeatedly and prominently presented in all the other provisions of the Act. We think, upon a reasonable construction of the Act, the only principle of apportionment authorized is according to the ratio of the benefits received—that this principle of apportionment applies to railroad corporations and companies as well as to owners of lands deemed benefited. The principle of apportionment prescribed is, therefore, uniform and not liable to the constitutional objection suggested.

It will be observed that I have thus far confined the argu-

ment to the question as to whether the statute prescribes a uniform rule of apportioning the amount to be raised from the owners of the property benefited—whether the proper principle is adopted by the statute for ascertaining the proper amount which should be paid by the North Beach and Mission Railroad Company, appellant in this proceeding. The only questions necessary to be determined on this appeal are, whether the appellant is liable to be assessed at all, and, if so, whether the proper amount has been apportioned to it. We have in this case nothing to do with the remedy for collecting the amount which it ought to pay—whether it is too broad or too narrow, or whether any means at all have been provided for enforcing payment is not a question in this case. The clause of section seven, that such " assessment shall be a lien upon any property of said corporation or company in said city and county, and may also be enforced in the same manner as the assessment upon owners of lands and real estate intended to be benefited thereby," has no bearing upon any question involved in this appeal, and it is unnecessary to discuss the suggestions made in reference to it. This has reference to the remedy. It may be conceded, for the purpose of our decision, that it is incompetent for the Legislature to make the amount a lien upon the personal property of appellant, or any of its property outside of the district determined to be benefited, and that the Legislature has failed to sufficiently provide for enforcing payment against the franchise of the company so far as it embraces any rights or interests in Kearny street; for these questions only go to the remedy, and do not in any way affect the rule or principle prescribed by which the amount which the company ought to pay is to be ascertained. If the Legislature has adopted an improper remedy, or fails to make any valid provision, adequate or otherwise, to enforce payment of the amount properly assessed, or imposed a lien upon property exempt under the Constitution, it may remedy the defect or failure by further legislation on that point; but it in no way affects the question as to the amount which ought to be paid involved on this appeal. This

must be so from the nature of things, and so are the authorities, so far as any bearing upon the point have fallen under our notice.    A question involving a similar principle arose in *People* v. *Lawrence,* 36 Barb. 181, where an assessment of the sum of one hundred and twenty-five thousand dollars was made upon the property holders of the district benefited, to pay the Long Island Railroad Company for a surrender of its right to use steam on the portion of its road in the said district.    The Court say:  "This assessment may be valid, although the machinery intended for its collection may fail. *    *    *    But an objection, constitutional or other, to the means which the Act gives for the collection of the assessment, is not necessarily an objection to the assessment itself. We should not reverse the proceedings of the Commissioners if the statute provided no mode for the collection of their assessment, and we cannot be asked to do so because it gives a remedy for that purpose which is ineffectual, or even unconstitutional" (181.)   So here the Commissioners only determined the amounts—the portion of the whole—which ought to be paid respectively by the appellant and the several owners of land benefited.   They have nothing to do with liens, the means of enforcing payment or with consequences; and all we can do is to review their action and the order of the County Court confirming it, and, if no error is found in the apportionment, the order must be affirmed.

Fourthly—Did the Commissioners apportion the amount among the owners of lands and the appellant according to the benefits received by each?

There is nothing in the record to show—and we have no reason to suppose—they did not.   The Act, as we have seen, upon a reasonable and proper construction, requires the apportionment to be so made.   Such, we think, would be the construction that practical business men, at all competent to perform the duties, would put upon it; and we have no doubt that the Commissioners so construed it.   The County Court so construed the Act, as the record clearly shows; and the seventh section requires the Commissioners "in case of

any controversy, or doubt respecting any legal principle involved in their proceedings, or in any determination to be made by them," to apply to the County Court for instructions. If they had any doubt—and they could scarcely have adopted a different principle of apportionment with respect to appellant, without some doubt—they must have called upon the County Court, and have received instructions in accordance with the construction given the statute by the County Court and herein approved by us. These proceedings were under the supervision of the County Court and a part of the proceedings of the Court. Besides, we cannot presume that the Commissioners gave an erroneous construction to the Act and adopted a principle different from that prescribed. We might as well presume that they adopted some principle other than that prescribed in apportioning the amounts upon the owners of lands. Error must be affirmatively shown by the party relying upon it. The County Court and the Commissioners had jurisdiction to perform the various duties assigned to them respectively by the provisions of the Act; and section twenty-one provides that " all presumptions attaching to the proceedings of Courts of general jurisdiction shall apply to the proceedings had in the said County Court under the provisions of this Act." " Such jurisdiction shall be deemed to attach upon the filing in the said County Court of the proceedings, maps, affidavits and certificates mentioned in the sixth section," etc. (Sec. 21.) All subsequent proceedings, including appointment of Commissioners, their acts performed and report made under the direction and supervision of the Court, are " proceedings had in said County Court under the provisions of this Act," and are embraced in the presumptions referred to in the clause cited. This being so, as in Courts of general jurisdiction, the presumptions are all in favor of the validity of the proceedings—that every necessary act was correctly and legally performed. The statute nowhere requires the Commissioners to expressly or affirmatively state that they apportioned the amounts according to the benefits.

The provision is : " They shall also in such report specify, in the form prescribed by law for assessment rolls in said City and County of San Francisco, the sums of money which each and every owner or occupant of houses and lands, corporation or company deemed to be benefited by such improvement, whether known or unknown, as aforesaid, should pay toward the expenses of making the same," etc. (Sec. 8.) The amount to be paid—not the mode of arriving at the amount—is to be specified. The mode is prescribed by law, and is already known, and it is presumed that that mode will be followed. The report of the Commissioners of the amount assessed upon owners of lands, in the several appeals to this Court in the same proceedings, shows the amount assessed upon each owner, but does not state expressly that it was apportioned according to the benefits; and we might as well presume in those cases, as in this, that they adopted some other principle than that prescribed by statute. If a wrong principle was adopted, the appellant had an opportunity to show it on his objections to the report before the County Court, and to " take proof in relation thereto." (Sec. 9.) His counsel made the objection, but offered no proof to sustain it, and undoubtedly for the reason that there was no foundation for the objection. His only hope, doubtless, was, in establishing a different construction of the statute—the principal point argued here. However this may be, the presumptions are in favor of the correct action of the Court and Commissioners, and the validity of the proceedings. The burden of affirmatively showing that some error vitiating the apportionment intervened rests upon the appellant, and he has presented nothing in the record showing error in this respect.

But one case (*State* v. *City of Newark*, 3 Dutch. 186,) has been called to our attention that appears in any respect to conflict with the views here expressed, and the conflict is apparent, only, rather than real; for the case is clearly distinguishable. By the provisions of an Act to incorporate the City of Newark, passed in 1836, the Common Council was authorized to open, widen and improve streets and assess the

expenses " among the owners and occupants of all the houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantages each shall be deemed to acquire," to be assessed by five freeholders appointed by the Common Council. (Elmer's Dig. 656.) Nothing is said about railroads or railroad companies. In 1854 a supplementary Act was passed containing a single section relating to railroads alone, which provides that whenever any street in Newark, occupied or used by the track of any railroad is altered or widened for convenience of public travel under the Act to incorporate the city, it should be lawful for the Commissioners appointed under that Act " to assess such portion of said damages and expenses upon the corporation or company owning or using said railroad track, as to them should seem equitable and just," etc. (Laws, N. J., 1854, p. 395.)

The section is in very nearly the same language as the second proviso to the seventh section of our Act; but it does not stand in the same relations to other provisions making benefits received the basis of apportionment, as the proviso in our Act does. This section authorizes a portion of the expenses to be assessed upon the company owning the road, the track of which is laid in the portion of the street widened, whether the company is benefited or not. There is nothing in the original or supplemental Act directing a portion of the expenses to be assessed upon such railroad companies as are benefited. This is not the test, but the fact of the track being laid in the street widened is the test, and the only test, by which it is to be determined whether the company shall be assessed or not. Such is the language of the Act, and so, whether right or wrong, the Supreme Court of New Jersey construe it. Our Act is different. Owners of houses and lots and owners of railroads are mentioned together throughout the Act. Railroad companies are not to be assessed at all unless benefited. This is the test. The first step to be taken by the Board of Supervisors is to ascertain and determine by resolution what portions of the city and what " railroad companies and corporations, if any," will be benefited. (Secs. 1, 2, 5,

etc.)   And "the expense of any public improvement herein authorized shall be defrayed by assessment on the owners and occupants of houses and lands, corporations and companies, that may be benefited." (Sec. 16.)   Benefits constitute the test.

In *The State* v. *Newark*, an assessment to pay the expense of widening Market street was made upon the owners of the lots benefited, and on the New Jersey Railroad and Transportation Company.   Of the amount to be raised, one thousand two hundred fifty dollars for houses and lots owned by the railroad company, and eighteen thousand dollars on account of the railroad track laid in the street and used by the company. The assessment as to the houses and lots was affirmed, and that as to the railroad track held invalid.   The railroad in that case was not a street railroad for the accommodation of city passengers, but a railroad for the transportation of passengers and freight between distant cities by means of trains of cars propelled by steam.   It may well be that such a railroad, or the easement and estate held by the company in the street would not be enhanced in value, or its profits increased by the widening of the streets of a town or city which it enters, or through which it passes, and that the corporation as the owner of such road would not be benefited by the improvement. Indeed, it is difficult to see how it could be benefited in any sense other than any individual who has occasion to pass through the street.   It is very different from a street railroad designed to take up passengers at every point on its route, the profits of which depend, wholly or largely, upon the number of persons who frequent the street, and by reason thereof have occasion to use its cars.   And it was on the ground that the railroad could not by possibility be benefited, and was not required by the Act of New Jersey to be benefited, in order to subject it to assessment, and was not in fact assessed by the Commissioners according to benefits, that the portion assessed upon the company in respect of the road was held invalid. The Chief Justice says: "The assessment is not required to be made with any regard to the benefit the improvement may

confer upon the company.  From all that appears, the assessment may have been graduated by a regard to the ability of the company to pay—to the value of its stock—or to the amount of travel that passed through the street upon the railroad.  It does not appear that the improvement added any value to the road itself, or to the stock of the company."  (3 Dutch. 191.)  After further argument to show that the company could not be benefited, the Chief Justice adds: "It is made for a public purpose, and confers no special benefits upon the property of the company."  The other opinion in the case adopts the same general line of argument, and after stating that the Commissioners did not find the company to be benefited, closes that branch of the case as follows: "In any other light than as a tax for the purposes of the municipal government, this assessment is simply the taking of a sum of money from the railroad company for public use, without even the pretense of compensation.  As a tax it is a burden, and does not come within the reason of the *Patterson Case*, or of the other cases like it [that is to say, it is not assessed for benefits, or on any other recognized principles of apportionment]; and, in either aspect, it is an exercise of power forbidden by the Constitution."  (Ib. 195.)  Thus the decision is based on the ground that the statute of New Jersey did not require the assessment on the railroad company to be made on the basis of benefits; that it was not in this instance so assessed in fact; that the company was not and could not be benefited by the work; that regarded as a tax it was not apportioned on any admissible principle; or regarded as taking private property for public use, it was without compensation.

In the present case the statute requires the expense to be assessed upon the owners of houses and lands, and railroad companies to be benefited.  The record affirmatively shows that the Board of Supervisors determined that the appellant would be benefited, and it is manifest that it may be very largely benefited by the improvement.  The assessment, as we have held, must be regarded as made according to benefits,

and the case is clearly distinguishable from the one in New Jersey.

Lastly—Because the Act provides that the assessment shall be a lien upon all the property of the corporation in the City and County of San Francisco, it is said that this is in effect levying a tax upon all the property of the corporation, whether in the district benefited or not, and makes it general taxation and not assessments for benefits, and for this reason the Act is unconstitutional and void. We have before seen that it is unnecessary to determine the question raised on this appeal, for the reason that it has nothing to do with the amount that ought to be paid by the company, but only relates to the remedy for collecting it. The remedy may be too broad or too narrow, inadequate, or even unconstitutional in whole or in part, and yet the apportionment be valid—the amount that ought properly to be paid, properly determined.

But if it were necessary to determine the question now, I am clearly of opinion that the objection is untenable for reasons which will be found fully stated in my opinion in *Taylor* v. *Palmer*, 31 Cal. 666, and which it is unnecessary to repeat here.

The points considered are the ones mainly relied on by appellant to reverse the order of confirmation. There are some other points of minor importance made in the briefs, but we think they are untenable, for reasons sufficiently stated in the opinion of the County Judge, and we will not extend this opinion by discussing them further.

We think the order confirming the report of the Commissioners should be affirmed, and it is so ordered.

Mr. Justice SANDERSON delivered the following dissenting opinion, in which Mr. Justice RHODES concurred :

The principal question made in this case relates to the constitutionality of the Act under which it arose—is it repugnant to the eleventh section of the First Article of the Constitution which provides that " all laws of a general nature shall have

a uniform operation? " I think it is, and am therefore of the opinion that the entire Act is null and void, and consequently that all the proceedings which have been taken under it, for the purpose of improving Kearny street, are also null and void.

That the statute is a general law, within the meaning of that clause of the Constitution to which I have referred, is not disputed (*Smith* v. *the Judge of the Twelfth Judicial District*, 17 Cal. 554; *French* v. *Teschemaker*, 24 Cal. 518; *Bourland* v. *Hildreth*, 26 Cal. 257.) Being a general law, does it operate uniformly upon all classes of persons upon whom it operates at all?

There are two classes upon which it operates—one consisting of the owners and occupants of houses, lots, and lands, and the other, of railroad companies or corporations. (Sec. 7.) Does it operate in the same manner upon the latter as upon the former? I think not.

As to the former it provides that the Board of Supervisors shall designate what houses, lots, and lands, in their judgment, will be benefited by the improvement of the street, and that the owners and occupants thereof shall be taxed, for the purpose of paying the cost of the improvement, in proportion to the *benefit* which will result to their houses, lots, and lands from the improvement (Sec. 7;) and that when thus ascertained such tax shall become a lien upon the houses, lots, and lands so designated (Sec. 15, subd. 5.)

As to the latter it provides that the Board of Supervisors shall designate what railroad corporations will be benefited, and that the corporations so designated shall be taxed such proportion of the cost as shall seem *equitable and just* to the Commissioners of appraisement and assessment (Sec. 7,) and that such tax, when ascertained, shall be a lien upon all property belonging to them in the City and County of San Francisco (Id.)

It appears obvious to me from the bare statement of the manner in which the statute operates upon these different classes that its operation is not the same, either in respect to

the rule of levy and appraisement, or the lien and collection of the tax—the two principal particulars in which the statute operates.

I. In respect to the owners of lands, the mode of proceeding, in respect to the levy and apportionment of the tax, is clearly and explicitly defined—nothing is left to the discretion of the Commissioners. They are directed to look only to the property, designated by the Board of Supervisors, as the foundation of their apportionment, and are instructed to inquire and ascertain how much each parcel will be benefited by the improvement, and to tax the owner in proportion to the benefit so ascertained. In no respect is the foundation of the apportionment, or the mode of proceeding, left to their discretion. It is not so in the case of railroad corporations, but directly the reverse. Between the two modes there is all the difference that there is between a rule and no rule—no discretion and absolute discretion. The Board of Supervisors is directed to name such railroad corporations as will be benefited, and the Commissioners are merely directed to tax them such an amount as they may think "equitable and just." Instead of being restricted to a particular basis, in some form of property, as in the case of the owners of land, for the purpose of estimating the benefits which will accrue to the corporation, and then directed to tax it in proportion to those benefits, the Commissioners are allowed entire freedom to select their own basis of benefit, or none at all, and then to tax the corporation whatever they may think proper, or according to their uninstructed notions of what is "equitable and just." In other words, in the one case the Legislature prescribes the rule of action, and in the other the Commissioners are left to pursue their own course.

II. In the case of the owners of lands the tax is made a lien only upon the property which is benefited. In the case of railroad corporations it is made a lien upon all the property of the corporation in the City and County of San Francisco, whether benefited or not. Under the rule in *Taylor* v. *Palmer*, 31 Cal. 240, only such property as will be benefited can be

taken to pay the tax. It results then that the property designated as benefited, in the case of the owners of land, can be taken to pay the tax, and that they can be made to pay, while in the case of railroad corporations, no property having been designated as benefited, none can be taken, and therefore the railroad companies cannot be made to pay.

To repeat: In the one case the Board of Supervisors is required to designate the property which will be benefited, and in the other it is not. In the one case the Commissioners are told what property to take as the basis of their estimate of benefit; in the other they are not, but are left to choose for themselves. In the one case they are told to tax in proportion to the benefit which will accrue to certain property, in the other they are not so restricted, but are allowed the largest liberty and told to do whatever their uneducated notions of equity and justice may dictate. In the one case the tax is made a lien upon certain property, which is designated, and can be collected, in the other it is made a lien upon property which is not benefited and therefore cannot be collected (*Taylor* v. *Palmer*,) for the only property of the railroad corporations which is benefited, (as held by my associates) is its easement or franchise, and that cannot be sold, except with the consent of the Legislature, which is not given (*Wood* v. *Truckee Turnpike Co.*, 24 Cal. 474.)

Such is my reading of the statute. To read it the other way would be to transpose one of the most salutary maxims by which Courts are guided—*jus dicere non jus dare.*

For these reasons I am compelled to dissent from the various conclusions reached by a majority of the Court in the several appeals which have been taken in the course of these proceedings. In my judgment the entire action of the city government in the matter of widening Kearny street should be set aside as being null and void.