# THE CITY OF CHICAGO

*v.*

# LAWRENCE BAER *et al.*

1. SPECIAL ASSESSMENTS — STREET RAILWAYS — *benefits must be assessed upon all who are directly benefited* — *principle of the Larned case applied.* The rule adopted in the case of the *City of Chicago* v. *Larned,* 34 Ill. 267, that the constitutional provision, requiring equality of taxation, applied as well to special assessments for public improvements, as to any other form of taxation, extends to the mode of distributing the burden among those who are to be benefited; so that, when the burden is to be thus imposed, it must be imposed upon all who are directly benefited by the proposed improvement, in the ratio of benefits, since it would be a violation of the equality sought to be secured by the Constitution to exempt a portion of those benefited, and thereby increase the burden upon the remainder.

2. Or, referring the right to make these special assessments, rather to the right of eminent domain than to the taxing power, as was done in the *Larned case,* and permitting the just compensation required by the Constitution to be made in benefits, still the assessments must be made in the *ratio* of advantages or benefits, that is, they should be imposed equally upon all property equally benefited, or they will be unlawful.

3. A city ordinance which seeks to exempt a portion of the property to be benefited from paying for its portion of street improvements is not only in violation of the constitutional provision securing equality of taxation, but also of that other principle of constitutional law, that the property of one person cannot be taken for the use of another, either with or without compensation.

4. Nor can the legislature confer upon a city the power to make a valid contract with the owner of any interest in property which should contribute toward the expense of such improvements, which shall have the effect to exempt him from his portion of the burden.

5. SAME — *what character of interest or estate is subject to such assessments* — *street railways.* An assessment for the improvement of a street must be laid upon all property that is substantially and directly benefited. This necessarily excludes all personal property of a movable character. But every estate, in land, adjacent to the street, whether in fee, for life or for a term of years, may be increased in value by the improvement, and would be subject to the assessment.

6. A street railway company occupying a portion of a street with their track and in the use thereof, under a charter, and a contract with the city authorities, have a franchise and right of occupancy which is a property of a character to be substantially benefited by the paving of such street; and in proportion as it is thus benefited it should contribute its share to the cost of the improvement, in common with the other property upon the street

APPEAL from the Superior Court of Chicago, the Hon. JOHN M. WILSON, Chief Justice, presiding.

The opinion of the court contains a sufficient statement of the case.

Mr. S. A. IRVIN, Messrs. GOUDY & CHANDLER and Mr. E. C. LARNED, for the appellant.

Mr. FRANCIS ADAMS and Mr. M. F. TULEY, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 27th of July, 1865, the common council of the city of Chicago, passed an ordinance requiring North Clark street, from the north line of Chicago avenue, to the dock line of the Chicago river, to be curbed with stone and paved with what is known as the Nicholson pavement. The commissioners of the board of public works proceeded to make an assessment on the real estate deemed benefited by the contemplated improvement, and reported it to the common council, by which body it was approved, and on the 18th of October, 1865, a warrant was issued for its collection. At the February Term, 1866, of the Superior Court of Chicago, the collector made an application for judgment against those lots on which the assessment had not been paid. The owners of many of the lots appeared and resisted the petition. The court sustained their objections, and refused to enter judgment, and the city has brought the record to this court.

In the view we have taken of this case, it is necessary to consider but one of the numerous objections taken to the collector's report. It appears by the record that a street railway company, called the North Chicago City Railway company, has possession of a considerable portion of this street by its road-bed, ties, rails and cars, and that no part of the assessment in question was levied upon the railway company. It is not contended that the company is not benefited by the improvement. That it must be very largely benefited, is a proposition as to which, we presume, there can be no contro-

versy. We are not advised by the record what is the present pavement of North Clark street, or whether it is paved at all, through the whole distance intended to be covered by the proposed improvement. If paved, we must suppose the pavement has become imperfect, or it would not be renewed at a heavy cost. But whether this new pavement was to be in place of one of some other kind, no longer fit for use, or to replace the alternate mud and dust of the original street, it is clear that the railway must be largely benefited by the improvement. It must be a matter of great importance to it to have a smooth and durable road-bed for the passage of their cars and the travel of their horses. The commissioners have not reported that the railway was not benefited. No question of that character embarrasses the record. It is admitted in all the arguments, that the railway was not assessed, because, in whatsoever degree it might be benefited, it was not considered by the city authorities liable to any portion of the expense. The case is submitted to us upon that issue, and both parties express themselves desirous of a decision that shall settle a question of much importance to the people of Chicago. We assume then, as counsel have assumed, that the railway company would be benefited by the proposed improvement. The precise degree is, for the purposes of this case, wholly immaterial.

On the 14th of February, 1859, the legislature passed an act incorporating the North Chicago City Railway company, and authorized it to construct and operate a railway in such streets in the north division, and upon such terms, as might be agreed upon with the city council. On the 23d of May, 1859, the council passed an ordinance, the seventh section of which purports to fix these terms, and which the company accepted. On the original draft of the ordinance, now on file in the city clerk's office, and over a portion of this seventh section, is pasted a strip of paper, on which is written what purports to be a portion of the provisions of this section. The writing underneath this pasted paper is not obliterated, and, by being held against a strong light, can be read. The writing under-

neath requires the company to keep eight feet of every street occupied by them, if only a single track is laid, or sixteen feet if a double track is laid, in good repair and condition, and to pay in the same proportion for any improvement that shall be ordered by the city council. The writing upon the pasted paper is so worded as to make the company liable for only ordinary repairs. The handwriting of the original ordinance and that upon this pasted paper are not the same. It is contended on the one side that the section which actually was adopted by the council was that written upon the original paper, and that the pasted paper is a forgery, interpolated into the ordinance without the authority of the council, and never adopted by that body. All this is denied upon the other side; and it is contended that the provisions found on the pasted paper were a portion of the ordinance adopted. On this issue much evidence was taken, and to its discussion much of the argument has been devoted. Whether, however, this pasted paper was proved to be a forged interpolation, by evidence legally admissible for that purpose, is a question which, in the view we have taken of the case, it is unnecessary to decide. It may be remarked, however, that the mere fact that such a question should be made and left in so great doubt, and the evidence embodied in the record in regard to it, show the necessity of adopting some system by the common councils of our growing cities, whose local legislation affects pecuniary interests of great value, that shall not leave in doubt what the ordinances really are under which their people live.

We now will state the grounds upon which we place our decision. In our judgment, this case must be clearly decided upon the principles established by this court as the law of this State, in the case of the *City of Chicago* v. *Larned*, 34 Ill. 267. That case was very fully argued and very maturely considered by the court, and we are entirely satisfied with the conclusions there announced. It was there held, that the constitutional provision requiring equality of taxation applied as well to special assessments for improvements of this character as to any other form of taxation; that, when the burden is to be

imposed upon those who are benefited by the proposed improvement, it must be imposed upon all who are directly benefited in the ratio of the benefits, since it would be a violation of the equality sought to be secured by the Constitution, as well as of all just principles of taxation, to exempt a portion of those benefited, and thereby increase the burden upon the remainder. It is true, the right to make these special assessments was referred rather to the right of eminent domain than to the taxing power, and it was said the just compensation required by the Constitution might be made in benefits; but it was held that the assessment must be made in the *ratio* of advantages or benefits, which would necessarily require that it should be imposed equally upon all property equally benefited, or it would be unlawful. The court said, "from the case of the *Canal Trustees* v. *The City of Chicago*, 12 Ill. 400, to the present time, the ruling principle of all of them is, that, as the assessments are in the ratio of advantages or benefits, they are lawful." Hence, the court held that an assessment for the improvement of a street by which the cost was assessed upon the property bordering the street, in proportion to the frontage of each lot, without any reference to the degree in which the different lots might be benefited, was unconstitutional and void, because, under the guise of a special assessment, and under the plea of eminent domain, the city was really violating the principle of equality of public burden prescribed by the Constitution. The sole question involved and decided in that case, was the same presented by the case at bar.

In this case, as in that, the cost of the improvement has been assessed upon property without reference to the ratio of benefits. Can any thing be clearer than that, if one-third or one-quarter of all the benefits to be reaped by property holders from this improvement accrues to this railway company, and yet they are wholly exempted from the assessment, the other property holders are unequally and unjustly taxed to the extent of that portion which, in the ratio of benefits, should have been assessed against the railway? In other words, their property is taken for the benefit of the railway. Suppose, for

example, a street improvement costing ten thousand dollars was of such a character as to increase to that amount the value of A's property, and B and C each have property whose value is increased to the same amount, but nevertheless the entire cost of the improvement is assessed upon the property of A. Can his complaints be justly answered by telling him that he is not injured, because, although he pays ten thousand dollars, his property is increased in value to that amount? May he not truthfully reply that he has nevertheless been obliged to pay for benefits to the property of B and C, and to that extent his money has been taken for their use? We hold it to be clear, that, while the power to make these special assessments may be sustained under the right of eminent domain, yet, in making them, the constitutional principle of equality applies as fully as to the ordinary modes of taxation — that one person's property cannot be improved at the expense of another, and that no special assessment can be sustained which imposes all the cost upon a portion of the property benefited, and leaves other property equally benefited wholly exempt. That the exact ratio of benefits can be determined with mathematical nicety is of course impossible, but that is the principle upon which the assessment must be made, as correctly as is possible to fallible human judgments.

In the *Larned case* the court say: "We consider that both the exercise of the right of eminent domain and the power of taxation are limited under our Constitution, and the rule with us is deduced, not from general principles, but the Constitution itself, that there does not exist either in the legislature, or in any of the subdivisions of State sovereignty, a power of apportioning taxes, whether of a general or local character, except on the principle of equality and uniformity."

This most salutary principle, restraining the wanton exercise of municipal authority in making these special assessments, and having its firm basis, not only in the constitutional provisions securing equality of taxation, but also in that other principle of constitutional law, universally recognized by the American courts, that the property of one person cannot be taken

for the use of another, either with or without compensation, must be held as invalidating this ordinance, if it really passed in the form insisted by the appellant, so far as it seeks to exempt the railway company from paying for its portion of street improvements, in proportion to the benefits received. The city council could make no valid contract of this character, and the legislature could not authorize it to do so.

The counsel for appellants seek to discriminate between the present case and *The City of Chicago* v. *Larned*, by insisting that assessments can only be laid on real estate, and that the railway company has no real estate, but only a right of way. The position is ingenious but unsound. The assessment must be laid upon all property that is substantially and directly benefited. This necessarily excludes all personal property of a movable nature. Its value cannot be affected by laying this pavement. But every estate in land adjacent to the street, whether in fee, for life or for a term of years, may be increased in value. If adjacent property is held under a lease for fifty or a hundred years, the benefit to the property arising from replacing an old by a new pavement, would probably accrue wholly to the lessee.

The pavement would probably be worn out before the expiration of the lease, and, therefore, the benefit which might accrue to the owner of the fee would be so uncertain and remote as not to be taken into the account. In a case of that character, as between the lessee and the owner of the fee, the former would undoubtedly be required to pay the entire assessment upon the property. *Prettyman* v. *Walston*, 34 Ill. 191.

Now, it is true, as urged by counsel, that the railway company has not become the owner of any portion of these streets in fee, but it has certainly, through its charter from the legislature, and its contract with the city, acquired a property in them of the most valuable character, which neither the legislature nor the city can take away without the consent of the company, and capable, like other property, of being sold and conveyed. The city council has made a contract with the company, by which it has granted to the latter what is substantially a lease-

hold interest in a portion of this street for a term, by the original ordinance, of twenty-five years. The legislature, at its last session, extended the charter to ninety-nine years, but whether the city council has extended the term for occupying the street, this record does not inform us. The terms offered by the city in its ordinance were formally accepted by the company, and it executed a bond to the city to secure compliance on its part. By this contract the railway company acquires the right to occupy a certain portion of the street by its ties, rails and cars, so far as may be necessary for operating the railway. It has acquired rights in the street which neither any other person or company, nor the general public possess. It can now occupy the street in a manner which would not be permitted without the aid of legislation. If a private individual were to occupy a street in this manner, without authority from the city council, he would be liable to prosecution.

It is wholly unnecessary to define, for the purposes of this case, what is the precise extent or nature of its property.

Certain it is, that this railway company has a franchise appurtenant to this street; that through this franchise it has a right of occupancy in a portion of the street, peculiar to itself, and, so far as may be necessary to run its cars, exclusive; that this right of occupancy is secured for a long term of years; that this franchise and this right of occupancy together constitute a property fixed and immovable in its character like realty, and recognized and protected by the law as fully as a fee simple in land; that this property is of a character to be substantially and directly benefited by the proposed pavement; and that in proportion as it is thus benefited it should contribute its share to the cost of the improvement in common with the other property upon the street.

In *Rex* v. *Brighton Gas-light Company*, 5 B. & C. 466 (11 E. C. L. 543), the question was, whether the gas company was liable to the poor-rates, and this depended upon whether their gas-pipes, laid under the surface of the streets, made them " occupiers of land " in the parish. The court held that the company " were in the exclusive occupation of that portion

of the land in which their pipes lay," and that they were liable to be rated for the relief of the poor of the parish of Brighton, although their gas works were in the parish of Rottingdean, and the gas was sold and used in the parish of Brighthelmstone, and the only connection of the company with the parish of Brighton was in using its streets for laying pipes to convey the gas. Numerous authorities are cited by the court in support of its decision. That is a much stronger case than the present in favor of taxing, as fixed property, a private easement over a public street.

We would remark, in conclusion, that the rule declared in *The City of Chicago* v. *Larned*, to be a constitutional requirement in regard to the tax levied under these special assessments, and here re-affirmed, is in conformity with all the charters ever granted to the city, except that of 1863. Those of 1837, 1851 and 1865 all require the assessment to be in the ratio of benefits. That case, therefore, introduced no new rule into the civil polity of Chicago, nor one difficult of application. The judgment of the court below must be affirmed.

*Judgment affirmed.*