City of New Haven *v.* Fair Haven & Westville R. R. Co.

# CITY OF NEW HAVEN *vs.* FAIR HAVEN AND WESTVILLE RAILROAD COMPANY.

The charter of the city of New Haven authorized the city to pave its streets, and assess upon the persons whose property was especially benefited thereby a proportionable and reasonable part of the expense, which assessment should be a lien upon the property especially benefited, liable to be foreclosed in the same manner as if it were a mortgage in favor of the city; and provided that any person aggrieved by such assessment might appeal therefrom to the Superior Court.

Held, 1. That the rails, sleepers, ties and spikes of a horse railroad company, so laid into and attached to the soil of the street as to become a part of the realty, were real estate, and as such liable to assessment for the expense of paving the street through which they were laid. 2. That the right and power to assess were in no way dependent upon a lien; that the lien was intended merely as security in addition to a proper remedy at law; and that an action of debt would lie to recover such assessment. 3. That the defendants, as to the question of the want of jurisdiction of the city to make such assessment, were not confined to their remedy by appeal, but might show such want of jurisdiction in defence to such action. 4. That the defendants having suffered the city to make the improvement and incur the expense, with full knowledge of the proceedings and without objection, were estopped from setting up the claim that their charter required them to pave the road covered by their track at their own expense.

ASSUMPSIT AND DEBT, to recover the amount of benefits assessed upon the defendants for paving a part of Chapel street in the city of New Haven; brought to the Superior Court, and reserved for advice upon the following facts found by a committee.

The plaintiff and defendant are corporations duly incorporated by the legislature of this state. The defendant was duly organized pursuant to the provisions of its act of incorporation, and had, prior to the passage of the orders of the court of common council hereinafter referred to, constructed a horse railway through certain streets of the city of New Haven, and among others through that portion of Chapel street in said city lying between Union and East streets, and was previous to and at the time of said orders, and is now, in the possession and enjoyment of a city horse railroad with its appurtenances. The property of said railroad company,

in addition to their franchise, consists of a lot of land, with a stable and out-buildings thereon, outside of the limits of the city of New Haven, of horse railroad cars, of horses used to draw those cars, and of a railroad track composed of wooden sleepers and ties, upon which are laid iron rails fastened thereto by spikes.

On the 21st of June, 1866, the court of common council of the city of New Haven passed the following order or vote :

" *Ordered,* That, whereas the court of common council of the city of New Haven has heretofore, to wit, on the 24th day of July, 1865, authorized the road commissioners to contract for a Belgian pavement, to be laid in Chapel street between Union and East streets, and

*Whereas,* in the opinion of this council, the public good requires that the pavement so authorized to be contracted for be laid upon said street.

Therefore it is ordered, that Chapel street be paved according to the aforesaid order, and a proportional and reasonable part of the expense thereof be assessed upon the persons whose property is especially benefited thereby ; and the particular amount to be paid by such person or persons shall be estimated, the assessment shall be made, published and collected or secured, as the case may be, in the same manner in all respects as provided by the fourth and fifth sections of the resolution passed May Session, 1862, and approved June 27th, 1862, making the city of New Haven a highway district."

Pursuant to this order that portion of Chapel street lying between Union and East streets was paved, by order of the road commissioners of the city of New Haven, with a stone pavement known as the Belgian pavement, at the expense of the city.

On the 24th of April, 1867, the court of common council passed the following order or vote :

" *Ordered,* That the action of the road commissioners in paving Chapel street between Union and East streets with Belgian pavement is hereby approved.

And be it further ordered, that the sum of ten thousand,

one hundred fifty-three dollars and twelve cents, being a reasonable proportion of the total expense of paving Chapel street between Union and East streets with Belgian pavement, according to the order of the common council, be and the same is hereby assessed upon persons whose property is especially benefited thereby, and who are hereinafter particularly named. And that the particular amount of such assessment to be paid by every such person, is hereby estimated, assessed and declared to be as follows : such amount being a proportional and reasonable part of the whole amount assessed to all such persons, to wit:

Sundry persons named, assessed

to the amount of            $

Fair Haven and Westville Railroad Co.,      3,384.17"

A copy of the order passed on the 24th of April, 1867, was published for two weeks prior to the commencement of this action, in the New Haven Daily Register, and in the Daily Journal and Courier, two daily newspapers published in the city of New Haven every day except Sundays. The amount assessed by the order passed on the 24th of April, 1867, against the defendant, has never been paid by that company. The construction of the pavement did not benefit the land or buildings belonging to the railroad company, or their cars, or the horses used to draw those cars, or the iron or wood work forming the track of the company, except as hereinafter stated. The pavement rendered it more easy to replace the defendant's cars when off the track, but also operated to injure those cars by causing more frequent breakages of the flanges of the car wheels, and by causing a greater jar or shock to the cars when off the track, and the pavement was an injury to the horses of the defendant, in common with those of the traveling public, by causing horses traveling over it to become lame, and wear out sooner than if they traveled over an unpaved road. Before the construction of the pavement that portion of the street lying between the rails of the defendant's track, and immediately adjacent thereto, but exceeding the distance of two feet outside of each rail, was liable to be, and was, dug out and carried away to the depth

sometimes of five inches, by the passage of carriages and horses, so that the defendant was put to the trouble and expense of replacing the earth so dug out and carried away, and the portion of the pavement laid on said street, lying between the rails and immediately adjacent thereto, not exceeding two feet outside of each rail, prevented the digging out and carrying away of the earth, and saved the defendant the trouble and expense of replacing it, and in so far as the pavement saved the defendant said expense and trouble, it was an especial benefit to the railroad company, and rendered their franchise and property, to that extent, more valuable. The whole width of the pavement is thirty-one feet, six inches, the width of the pavement between the rails of the defendant's track is four feet, six inches, and the total width of the defendant's track from the outside of one rail to the outside of the other rail is five feet. The other persons assessed by the order of the common council are all owners of land adjoining said street and fronting thereon.

The material portions of the charter of the city are as follows:

"Sec. 1. The court of common council of the city of New Haven may, whenever in its opinion the public good shall so require, order that any street or streets, highway or highways, now or hereafter existing within said city, shall be paved, cobbled, macadamized, or otherwise improved: and may, upon the execution of any such order, assess upon the persons whose property is especially benefited thereby a proportional and reasonable part of the expense thereof, and may estimate the particular amount of such expense to be paid by every such person; said assessments to be made, published, and collected or secured, as the case may be, in the same manner in all respects as now provided by the fourth and fifth sections of the resolution passed May Session, 1862, and approved June 27th, 1862, making said city a highway district by itself; and all the provisions of said sections are hereby re-enacted, and made a part of this act."

The 4th and 5th sections of the act of June 27th, 1862, are as follows:—

"SEC. 4. Whenever any sewer, or other public work or improvement, shall have been laid out, constructed, or altered, by order of said court of common council, said court may assess a proportional sum of the expense of laying out, con_structing or altering the same upon any person whose property is especially benefited thereby, and may estimate the just proportion of such expense which such person shall pay: provided, however, that the sum or sums so assessed shall not become due and payable until said assessment shall have been published two weeks in two or more daily newspapers published in said city; and provided further, that if any person shall be aggrieved by such assessment, he may apply for relief to the Superior Court, held within and for the county of New Haven next after said publication shall have been made, in manner and form as is provided in the thirty-sixth section of the charter of said city. And said Superior Court may, if judged expedient, set aside said assessment, and order a re-assessment, as provided in said thirty-sixth section of said charter.

SEC. 5. All assessments made under and in pursuance of the foregoing section of this resolution, shall be and remain a lien upon the property especially benefited by any such public work or improvement, until the same are paid; which said lien may be enforced in the same manner as is provided in the thirty-ninth section of the charter of said city, in reference to liens for making side-walks; provided, however, that such lien shall not continue for a period longer than sixty days after the publication required by the next preceding section of this resolution, unless, before the expiration of that period of time, a certificate, signed by the street commissioner or by the mayor of said city, describing the premises on which the lien exists, and the amount claimed by said city, as a lien thereon, shall be lodged with the town clerk of the town of New Haven; and provided further, that such lien shall cease to exist, whenever a certificate that it has ceased to exist, signed by the mayor or street commissioner for the time being, shall be lodged with said town

City of New Haven *v.* Fair Haven & Westville R. R. Co.

clerk.    All such certificates said town clerk shall record
with deeds of land."

The 39th section of the charter is as follows : ·

" Said court of common council may, from time to time,
order the proprietor or proprietors of lands or buildings front-
ing upon highways and streets in said city, to make, raise,
level, pave or flag sidewalks and gutters in front of said lands
or buildings, in such manner and within such times as said
court of common council shall direct.   If any such proprie-
tor or proprietors shall neglect to perform the thing or things
required by any such order, in the manner and within the
time specified in such order, it shall be the duty of the street
commissioner, at the expense of said city, to execute such
order in the manner therein prescribed ; and the expense in-
curred by said commissioner on account of said city in exe-
cuting any such order, shall, from the time when such expense
begins to be incurred, be and continue a lien or real incum-
brance upon such lands and buildings in favor of said city,
and shall take precedence and priority of all other liens or
incumbrances thereon, (except taxes due the state,) and the
lands and buildings on which any such lien may exist shall
be liable to be foreclosed in the same manner as if said lien
were a mortgage on said lands and buildings in favor of said
city, to secure the amount of such expense."

*C. R. Ingersoll* and *Doolittle,* for the plaintiff, cited *Nichols*
v. *Bridgeport,* 23 Conn., 189 ; *Goddard* v. *Town of Seymour,*
30 id., 399 ; *Cone* v. *City of Hartford,* 28 id., 376 ; *City of*
*Bridgeport* v. *N. York & N. Haven R. R. Co.,* 36 id., 268 ;
*Imlay* v. *Union Branch R. R. Co.,* 26 id., 249 ; *Commission-*
*ers of Knox County* v. *Aspinwall,* 21 How., 539 ; *Barhyle* v.
*Shepherd,* 35 N. Y., 238 ; *Williams* v. *N. York Central R.*
*R. Co.,* 16 id., 109 ; 1 Redf. on Railways, chap. 11, § 7, art.
11 ; *Craig* v. *Rochester City & Brighton R. R. Co.,* 39 id.,
404 ; *Providence Gas Co.* v. *Thurber,* 2 R. I., 21 ; *Providence*
*& Worcester R. R. Co.,* v. *Wright,* id., 459 ; *Appeal of North*
*Beach & Mission R. R. Co.,* 32 Cal., 499 ; *City of Chicago* v.
*Baer,* 41 Ill., 306.

*H. B. Harrison,* with whom was *Blackman,* for the defendant.

1. No visible or tangible " property," of the defendant was benefited. The defendant's visible and tangible " property" consists only of land and buildings outside of the city, cars, horses, rails, sleepers, ties and spikes. None of this property was benefited. The assessment was made exclusively for benefits assumed to have been done to the defendant's franchise. But the act under discussion does not authorize or contemplate assessment for benefit to the defendant's franchise. The word " property," as used in the act, means *land,* and nothing else. The whole machinery provided by the act for collection of assessments is applicable only to collection of assessments for benefits to land. It cannot be applied to the collection of assessments for benefits done to a railroad franchise, or to any kind of personal " property," or to anything else except land.

2. There was a special and sufficient reason why the General Assembly should not have intended to authorize such assessment against this defendant. And in view of that reason a violent presumption arises against the plaintiff's construction of the assessment acts. Such benefit as the defendant receives from paving is received only from the paving of a particular part of the street, to wit, a ribbon of road covering the railroad track, and widening outside of it on either hand to a distance " not exceeding two feet outside of each rail." But this ribbon of road the defendant is bound by its charter to keep in good and sufficient repair at its own expense, when required so to do by the common council. Sec. 9 of Charter, (Priv. Acts of 1860, p. 102.) Sec. 2, Amendment of Charter, (Priv. Acts of 1862, p. 105.) The defendant may be compelled by mandamus to discharge this duty. *State* v. *H. & N. H. R. R. Co.,* 29 Conn., 538. This is the defendant's part, and all the part that ought to be imposed upon it, of the burden of keeping the highway in good repair. Not being benefited by the paving of the rest of the highway, why should it be assessed for such paving ?

3. At any rate this action will not lie. It is *ex contractu.*

City of New Haven v. Fair Haven & Westville R. R. Co.

The process of assessment and collection of assessments is an exercise of the power of taxation. It is *in invitum*. The defendant is not bound by any contract, express or implied. *Nichols* v. *Bridgeport*, 23 Conn., 189, 208 ; *City of Bridgeport* v. *N. York & N. Haven R. R. Co.*, 36 id., 255, and cases below cited.

The provisions of the assessment acts must be strictly pursued. The act of 1865 provides that the assessment shall be "collected" or secured "in all respects" as provided in sections 4 and 5 of the act of 1862, to wit, by process of foreclosure of lien. The order of the common council requires the same thing. Where a right, not existing at common law, is given by statute, and a remedy is given by the same statute, the party claiming the right is confined strictly to the remedy given by the statute. 1 Chitty Pl., 112, 143 ; Sedgwick on Statute and Constitutional Law, 94, 96 ; *Bangor House Proprietary* v. *Hinckley*, 3 Fairf., 387, 388 ; *Andover & Medford Turnpike Co.* v. *Gould*, 6 Mass., 40, 44 ; *City of Boston* v. *Shaw*, 1 Met., 130 ; *Dudley* v. *Mayhew*, 3 Comst., 9 ; *Stevens* v. *Jeacocke*, 11 Ad. & El. (N. S.), 731, 741.

CARPENTER, J. This action is brought to recover the amount of benefits assessed upon the defendant for its proportional part of the expense incurred in paving a portion of Chapel street in New Haven, in and through which the defendant's railroad track is laid. The defence is, first, that the defendant is not liable to assessment ; and secondly, if liable, that this action will not lie, for the reason that the assessment can only be collected by enforcing the lien.

1. A preliminary question is made by the plaintiff, and that is whether the defendant is not now precluded from making this defence, on the ground that it can only be made on an appeal from the assessment, as provided in the charter. The charter provides in substance, that if any person shall be aggrieved by any such assessment, he may apply for relief to the Superior Court for the county of New Haven, and prescribes the time and manner of making the application. If the de-

fendant has any defence, we think it is not precluded from making it in this action. It is not put on the ground that the assessment is disproportionate. If it was, it is quite clear that the defendant's only remedy would be by application for relief to the Superior Court. But the defence is more radical —it denies the *right* of the city to make any assessment. In this proceeding the city exercised limited and special powers. The extent of the jurisdiction is defined and limited by the charter. If it acted within its jurisdiction, the assessment is valid and binding unless appealed from. If it acted outside of its jurisdiction, the act is unauthorized and void, and confers no rights upon the city, and imposes no obligation upon the party assessed. It being a jurisdictional question, and relating to the proceedings of a tribunal with special and limited powers, we are clearly of the opinion that it is an open question in this action.

2. The next question in order is whether the defendant was liable to assessment, in respect either to its property or its franchise. It is conceded that all the proceedings in making the assessment were regular in form, and that the improvement for which it was made was authorized by the city charter. The objection is chiefly that the charter does not authorize an assessment upon the defendant's property. The principal act, (Private Acts, vol. 5, page 769,) after authorizing the court of common council to order certain improvements, including the one now under consideration, provides that said court " may, upon the execution of any such order, assess upon the persons whose property is especially benefited thereby a proportional and reasonable part of the expense thereof, and may estimate the particular amount of such expense to be paid by any such person, &c." The word " property", as used in this act, is broad enough to embrace at least some of the property owned by the defendant, so that perhaps it is unnecessary for us to consider whether the mere franchise is or is not liable to assessment. The defendant's property consists in part of rails, sleepers, ties and spikes, so laid into and attached to the soil in the street where the improvement was made as to become a part of the realty. That property so situated is real estate

has been repeatedly decided. *Providence Gas Co.* v. *Thurber*, 2 R. I., 21; *City of Chicago* v. *Baer*, 41 Ill., 306; *Appeal of North Beach & Mission R. R. Co.*, 32 Cal., 499; *Farmers' Loan & Trust Co.* v. *Hendrickson*, 25 Barb., 494. We entertain no doubt that this ought to be regarded as real estate, and as such liable to assessment like any other real estate especially benefited, unless there is something in the charter showing that the legislature did not intend that this species of property should be assessed. We have carefully examined the charter and the various acts referred to, and are not satisfied that the legislature had any such intention. There is nothing in them limiting in express terms the meaning of the word property; and there is hardly enough in the provisions relating to liens to create such a limitation by implication. Without deciding the question whether a lien could or could not attach to this property, we are clearly of the opinion that the right and power to assess are in no way dependent upon a lien. The authority conferred by the legislature, and the proceedings of the court of common council pursuant thereto, created in the city a right to demand and receive from any person whose property was especially benefited thereby a certain sum of money, and imposed upon the person so benefited a corresponding obligation to pay said sum of money. The act then provides that the amount assessed shall be a lien on the property benefited, and prescribes the manner of securing and enforcing the lien. Now if the legislature intended that as the only mode in which the assessment could be collected, then there may be some force in the argument; but if it was intended merely as security, in addition to a proper *remedy at law*, then the argument is without force. We are inclined to think that the latter is the proper construction. We ought not to put such a construction upon the statute as to compel the city to resort to a proceeding in equity to collect the assessment, unless it is clearly demanded by the language used. If by implication, it should not rest on slight grounds, but should be clear and decisive. Such a construction would be prejudicial to the interests of both parties. A petition for a foreclosure is at best an indirect method of collecting a

debt.   It is oftentimes, perhaps usually, quite as expensive, and quite as likely to end after protracted litigation, as an action at law.   Embarrassing questions may arise in respect to the title, and the parties interested therein, and in the end the petitioner may be obliged to take real estate, and convert it into money as best he may.   We are not satisfied that the legislature intended that the city should necessarily be subjected to all this risk and inconvenience.   On the other hand, if in every instance when the assessment is not paid promptly, the city is obliged to resort to a lien, it might seriously embarrass the other party, by subjecting his property to an incumbrance against his will.   In addition to these suggestions, we would call attention to the fact that the statute provides that the lien shall not continue for a period longer than sixty days after the publication of notice, unless the certificate required is lodged with the town clerk.   Now it can hardly be supposed that the legislature intended that a failure to lodge such a certificate within sixty days should work a forfeiture of the whole claim; and yet such is the inevitable result if the defendant's construction is correct.   There is an obvious reason why the security should be lost; but we can discover none why the whole claim should be barred.

Another reason urged why this property should be exempt from assessment, is that the defendant's charter requires it to keep that portion of the street covered by and lying between the rails, and two feet on either side thereof, in repair at its own expense ; and that the legislature could not have intended to authorize the city to interfere with this duty, and deprive the defendant of the privilege of keeping it in repair in its own way.   It is a very interesting and important question, whether the defendant, by objecting to these proceedings at the commencement, could have practically defeated the whole improvement; but the case before us does not require us to decide that question.   The defendant suffered the city to go forward and incur the expense, with full knowledge of the proceeding, and without objection at the time.   The defendant must have known that the improvement would largely benefit it in the matter of repairs, that the proceeding was

City of New Haven v. Fair Haven & Westville R. R. Co.

under the statute, and consequently at the expense, in part at least, of the parties benefited. There was no reason to suppose that the city was doing the work of the defendant at its own expense, or at the expense of other parties. The presumption therefore is, in the absence of any finding to the contrary, not only that the defendant consented to the making of the improvement by the city, but that there was an implied understanding that the defendant was to bear its fair proportion of the expense. We think, therefore, that the defendant should be estopped from setting up this claim.

That the defendant is benefited to some extent by the improvement is apparent. Whether it is benefited to the extent of the assessment, and whether the assessment is a fair proportion of the whole expense for the defendant to pay, are not now open questions. Those questions could only be heard on an application for relief under the statute.

On the whole we are satisfied that the defendant's property was properly assessed.

3. The defendant in the next place objects that this action will not lie, but that the remedy, if any, is by enforcing the lien. This objection has been substantially answered under the preceding head. It is only necessary to add, that if the views there expressed are correct, it follows that the plaintiff is entitled to a remedy at law to enforce its claim. As the statute gives no such remedy, any appropriate remedy may be used for that purpose. This action is assumpsit and debt joined. We have no doubt that the plaintiff is entitled to recover in one or the other of these forms of action, and perhaps in either at its election. It being for a sum certain, and the claim originating in a statute which confers upon the plaintiff the right to receive, and imposes upon the defendant the obligation to pay, said sum, it is clear that the count in debt can be sustained. We advise judgment for the plaintiff.

In this opinion the other judges concurred ; except BUTLER, C. J., who dissented.