THE WEST CHICAGO STREET RAILROAD COMPANY

*v.*

THE CITY OF CHICAGO.

*Opinion filed February 17, 1899.*

STREET RAILWAYS—*when street railway cannot be assessed for paving street.* An ordinance requiring a street railway company to fill, grade, pave and otherwise improve the portion of the street occupied by its tracks, and between them, at the times and in the manner selected by the city for improving the other portions thereof, and the acceptance of the same by the company, in consideration of which its franchise is extended twenty years, constitute a contract fixing an equivalent for special assessments for paving the street and precluding further assessments for that purpose.

CARTER, C. J., and BOGGS and MAGRUDER, JJ., dissenting.

APPEAL from the County Court of Cook county; the Hon. W. T. HODSON, Judge, presiding.

EGBERT JAMIESON, and JOHN D. ADAIR, for appellant.

CHARLES S. THORNTON, JOHN A. MAY, and EDWARD J. HILL, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On June 6, 1898, the city council of the city of Chicago passed an ordinance for curbing, grading, and paving with granite blocks, that part of West Twelfth street extending from the east line of South Canal street to the east line of the street railway right of way in South Halsted street, to be paid for by special assessment, and on July 7, 1898, a petition was filed in the county court of Cook county praying for the levy of such assessment. An assessment roll was made and returned, in which an assessment of $283 was levied on the "right of way, right of occupancy, franchise and interest of the West Chicago Street Railway Company in and upon West Twelfth street, from the east line of South Canal street to the

east line of the street railway right of way in South Halsted street." Objections were filed by appellant, based upon the grounds, first, that its right of way, right of occupancy, franchise and interest were not subject to special assessment because not within the meaning of the words "contiguous property," as used in the statute; and second, that under the ordinance granting its right of way and interest in the street it was exempted by a valid contract from special assessments for defraying the cost of improvements of the character described in the ordinance, and that the attempted levy of the assessment violated the provision of the constitution of the United States which prohibits impairing the obligations of contracts. The objections were overruled by the court, and, no other objection being made, a jury was waived and the cause submitted to the court on the question of benefits, and a judgment of confirmation was entered.

The objection that appellant's property is not of such character that a special assessment may be levied upon it was argued at length in the original brief for appellant; but the contrary doctrine has been held by us, and since our decision in the recent case of *Cicero and Proviso Street Railway Co.* v. *City of Chicago*, 176 Ill. 501, it is conceded by counsel that the question is no longer an open one in this court. It is settled that a special assessment may be levied upon property of the character in question, in the absence of any contract affecting the question.

The remaining controversy between the parties to be considered is, whether appellant's liability to contribute to the improvement of Twelfth street by grading and paving the same has been fixed by a valid contract between appellant and the city establishing the share or proportion of its contribution for such purpose, so as to preclude the imposition upon it of additional burdens for that improvement.

Appellant was incorporated by an act of the legislature approved February 21, 1860, and was thereby author-

ized to acquire and exercise any of the powers, franchises, privileges and immunities conferred upon the Chicago City Railway Company by its act of incorporation or any ordinance of the city council of the city of Chicago, upon such terms and conditions as might, by contract between said railway corporations, be prescribed. The Chicago City Railway Company had acquired rights in the street in question in this way: The city of Chicago had, by an ordinance passed in 1858, granted to certain persons who, with their associates, were afterward incorporated as the Chicago City Railway Company, the right to lay tracks on certain streets, not including the street in question, and provided, among other things, that said persons should pay one-third of the cost of grading, paving, macadamizing, filling or planking on the streets, or parts of streets, on which they should construct their railways, and should keep such portions of the respective streets in good repair and condition. This ordinance was amended in 1858 by making said provision read: "The said parties and their associates shall, as respects the grading, paving, macadamizing, filling, planking of the streets or parts of streets upon which they shall have said railways, or any of them, keep so much of said respective streets as shall be occupied by the said railways, or either of them, in good repair and condition during all the time to which the privileges hereby granted to said parties shall extend, in accordance with whatever orders or regulations respecting the ordinary repairs thereof may be passed or adopted by the common council of said city." Said persons and their associates were incorporated as the Chicago City Railway Company by an act of the legislature approved February 14, 1859, and all the rights and privileges granted to said persons in and by said ordinance and the amendments thereto were by the legislature confirmed and vested in the corporation. An ordinance of the city of Chicago was adopted April 23, 1859, which recited the incorporation of said persons by

said act of the legislature under the name of the Chicago City Railway Company, and granted to said corporation the right to construct and operate its tracks upon Twelfth street covering the locality in question in this case, and all the rights and privileges before that time granted to said persons by the previous ordinance and amendment thereto were granted and confirmed to said licensee. The Chicago West Division Railway Company acquired from the Chicago City Railway Company the latter's rights in Twelfth street, and the appellant has succeeded to the rights of the Chicago West Division Railway Company, and the companies have complied with the provisions of the acts and ordinances.

On July 30, 1883, there were three street railway companies operating street railways in the different divisions of the city, and an ordinance was then passed providing for the payment of an annual car license by said companies. Section 2 of said ordinance provided as follows: "Each one of said railway companies shall hereafter, as respects the filling, grading, paving and otherwise improving or repairing the streets or parts of streets upon which it has constructed its railways, or any of them, fill, grade, pave and keep in good repair, during all of the time the privilege of using the said streets or parts of said streets shall extend, eight feet in width where a single track is used or sixteen feet in width where a double track is used, the said eight or sixteen feet to include the railway track or tracks, in accordance with such ordinance as the city council may pass respecting such filling, grading, paving or repairing; and the same shall be done by the railway companies with like material, in like manner and at the same time as required as to the rest of said street not embraced in the eight or sixteen feet in width, except that it may use stone as authorized, or such other material as may hereafter be authorized by the city council,  *  *  *  for the space between the rails of each track." In consideration of the

acceptance of said ordinance by the companies the right to maintain and operate their railways was extended twenty years.

Prior to the passage of this last ordinance, which now governs the rights of the parties, the force and effect of such a provision had been established by judicial construction. Certain property owners had objected to a special assessment for paving North Clark street because no part of the assessment was levied upon the property of the North Chicago City Railway Company, which was benefited by it. In that case there was an ordinance providing that the company should keep eight feet where there was a single track and sixteen where there was a double track in good repair and condition, and this court held that the ordinance, so far as it sought to exempt the property of the company from paying according to its portion of the benefits, violated the principle of equality and was invalid. (*City of Chicago* v. *Baer*, 41 Ill. 306.) William C. Sheldon, a stockholder of the North Chicago City Railway Company, claiming the contract to be valid and that the agreement to repair the width of the street specified exempted the corporation from contributing to the new improvement, filed his bill in the Circuit Court of the United States for the Northern District of Illinois to enjoin the collection of the special assessment on the ground that it was an attempted interference with and violation of the contract. Relief was granted according to the prayer of his bill, and there was an appeal to the Supreme Court of the United States. The ordinance there involved was passed May 23, 1859, granting permission to lay tracks upon certain streets, and the provision which was claimed as a contract of exemption was as follows: "The said company shall, as respects the grading, paving, macadamizing, filling or planking of the streets upon which they shall construct their said railways, or any of them, keep eight feet in width along the line of said railway on the streets wherever one track is

constructed, and sixteen feet in width along the line of said railway on all streets where two tracks are constructed, in good repair and condition during all the time to which the privileges hereby granted to said company shall extend, in accordance with whatever order or regulation respecting the ordinary repairs thereof may be adopted by the common council of said city." The Supreme Court of the United States declared the ordinance to be a contract the obligation of which could not be impaired, and held that the provision relating only to repairs fixed the proportion or share of all general improvements in the way of paving which should be imposed upon the company. The court said it was quite clear that the recitals of the ordinance embraced the whole subject of improvements of the streets, and that it was present to the minds of the parties when entering into the stipulation concerning repairs. In addition to its own construction of the contract the court found added weight in the fact that there had been a practical construction of the same kind by the parties to it. The only doubt in that case was whether the provision as to repairs also covered the subject of new improvements. It was also said to be perfectly settled that the legislature might commute with individuals or corporate bodies the burden of assessments of the character in question for what they might deem an equivalent, and that full power was conferred upon the city by the legislature to make the contract. (*City of Chicago* v. *Sheldon,* 9 Wall. 50.) The position of the city in that case was very much stronger than in this, since the provision there related to repairs, merely, while in this case all doubt whether it embraced new improvements was removed by the express stipulation as to the part of the street which shall be paved by appellant in the case of such new improvement. After that decision, this court, in *Parmelee* v. *City of Chicago,* 60 Ill. 267, referred to it as establishing the validity of such contract upon the principle of commutation and as hold-

ing that its obligation could not be impaired, but said that the subject matter of the assessment for widening a street, then under consideration, was not, by any fair interpretation, included within the terms or spirit of the ordinance which related to grading, paving, macadamizing, filling or planking.

These decisions were rendered in 1870 and 1871. This ordinance was passed in 1883—long afterward. The meaning of such an ordinance had been settled as fixing the share of the paving to be done by the railway company and regulating its duties and obligations in that respect. There are no grounds of distinction favorable to appellee between the ordinance in this case and the one construed in the *Sheldon case*. This ordinance covers the whole subject, and provides that "as respects the filling, grading, paving and otherwise improving and repairing the streets or parts of streets on which it has constructed its railways, or any of them," the railway company shall perform a certain part of the work. The language can only be construed as fixing and specifying the duties of the railway company in regard or with respect to all such improvements, and it means that when the company constructs its railway through a street or a part of it, it shall fill, grade, pave and keep in repair the width specified. This court has continued to recognize the power of the city to make such terms and conditions respecting the improvement of the streets, and in *Kuehner* v. *City of Freeport*, 143 Ill. 92, it was said that whether a railway should pay for paving between its tracks, as is sometimes done, or less or more, rests in the discretion of the municipal authorities. The same authority to pass such an ordinance and make such terms has continued to exist, and the city is authorized to grant the right to construct and operate street railways upon such terms and conditions, not inconsistent with the provisions of the statute, as it may deem for the best interest of the public. It can make its own terms in granting such privileges. In the case

of *Billings* v. *City of Chicago*, 167 Ill. 337, the same question was presented to us that was raised in the case of *City of Chicago* v. *Baer*, *supra*. Property owners on West Lake street objected to a special assessment because no part of it was levied upon the right of way and franchise of the West Chicago Street Railway Company, appellant in this case. The ordinance granting the privilege obliged the railway company to keep that portion of said street sixteen feet in width embraced between its tracks well paved and in good condition and repair. It was held that the ordinance was valid, and that the burden imposed upon the company to pave that portion of the street was to be regarded as an equivalent for the assessment of its property.

Appellee calls attention to the case of *Sioux City Railway Co.* v, *Sioux City*, 138 U. S. 98, as authority for the proposition that the contract is not binding. But it does not declare such a doctrine. In that case there was an ordinance of Sioux City requiring paving the street between the rails, but a section of the Iowa code provided that the charter of the company should at all times be subject to legislative control, and might at any time be altered, abridged or set aside by law, and that every franchise obtained might be regulated, withheld or subjected to restrictions upon the enjoyment thereof. The legislature, subsequently to the first ordinance, passed a law requiring railway companies in cities of the first class to pave one foot outside of the rails, and the city passed the ordinance considered in that case in accordance with the law. It was held that the reservation of power by the code was a condition of the grant, and that no contract was impaired where the company accepted its corporate powers subject to that reservation.

Neither does the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Nebraska*, 170 U. S. 57, afford any aid to appellee. The question there involved was the right to exercise police power for the safety of the community at

an important crossing within a populous city, and it was held not competent for the city and the railroad company, by a contract, to withdraw that subject from the reach of the police power.

Contracts affecting the public safety, health and morals fall within the police power, and may be supervised, controlled and changed by the legislature under its paramount duty to secure such safety, health and morals. The clause of the Federal constitution in question can not be invoked as against such legislative action.  No such question is involved in this case.  Indeed, the ordinance provides that the improvement and repairs of the street shall be in accordance with such ordinance as the city council may pass, and the material shall be under the control of the city council, and the work shall be done in like manner and at the same time as required in the rest of the street.  It was a condition of section 4 of chapter 66 of the Revised Statutes, entitled "Horse and Dummy Railroads," in force when the ordinance was passed and the grant extended, that every grant should be subject to the right of the proper authority to control the use, improvement and repairs of the street, alley, road, highway or public ground to the same extent as if no such grant had been made, and to make all necessary police regulation concerning the management and operation of the railroad.  Appellant is not contending for any right which would prevent the city authorities from controlling such use, improvement or repair, or making any necessary police regulation concerning the management and operation of the railroad.

The judgment of the county court is reversed.

*Judgment reversed.*

CARTER, C. J., and BOGGS and MAGRUDER, JJ., dissenting.