BOISOT v. AMARILLO ST. RY. CO.

(District Court, N. D. Texas, at Amarillo. July 23, 1917.)

No. 66.

1. EQUITY ⊜══409—FINDINGS OF MASTER—CONCLUSIVENESS.
    The rule that, where a master is appointed with the consent of all parties to hear evidence and report his findings of fact, such findings of fact are conclusive on the court, unless unsupported by any legal evidence or contrary to all the evidence, cannot be extended to cover findings of fact on issues not at the time made by the pleadings.

2. STREET RAILROADS ⊜══37—DUTY TO PAVE ROADBED—EFFECT OF ACCEPTANCE OF FRANCHISE.
    Where, at the time of the granting and acceptance of a franchise to a street railroad company, a city ordinance was in effect requiring such companies, on the paving of a street, to pave between its rails and to a distance on each side, such ordinance becomes a part of the contract, and its validity cannot be attacked by the company, and the duty to construct or pay for such pavement may also be imposed by the terms of the franchise, independently of any general ordinance.

3. STREET RAILROADS ⊜══37—DUTY TO PAVE ROADBED—EFFECT OF ACCEPTANCE OF FRANCHISE.
    The obligation of a street railroad company to pave its roadbed, imposed by its franchise or by ordinance in effect when it accepted its franchise, is contractual and independent of any general statute or ordinance authorizing special assessments for such improvements.

4. STREET RAILROADS ⊜══37—DUTY TO PAVE ROADBED—EFFECT OF INSOLVENCY.
    That a street railroad company is insolvent does not relieve it from the obligation to pave its roadbed assumed by acceptance of its franchise.

5. STREET RAILROADS ⊜══53—INSOLVENCY—LIEN OF CITY FOR PAVING ASSESSMENT.
    Where a street railroad company failed to pave its roadbed in a street as ordered by the city and required under its franchise, because of insolvency and a receivership, the city may enforce a lien for the cost of such paving against the property or its proceeds when sold.

6. STREET RAILROADS ⊜══55—INSOLVENCY—SUSPENSION OF OPERATION BY RECEIVER.
    In a suit to foreclose a mortgage and sell the property of an insolvent street railroad company, the court will not authorize its receiver to suspend operation of the road where the franchise is still in force.

⊜══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by Emile K. Boisot, trustee, against the Amarillo Street Railway Company, in which the city of Amarillo intervened. Decree for complainant and intervener.

The plaintiff trustee, alleging himself to be the holder of $125,000 first mortgage bonds of the defendant company, asked the appointment of a receiver. The company filed answer admitting the facts alleged, and with its consent a receiver was appointed. Thereafter the city of Amarillo intervened, and alleged that the city had duly passed an ordinance providing for the paving of Polk street, and had levied an assessment against the defendant company for its proportional share of the paving, aggregating $6,050, being the cost of the paving of that portion of the street between the rails of the street railway and extending two feet beyond; that the general manager of the company, at a meeting called to consider the assessment, made no objection to the same, but, on the contrary, agreed that the company would pay its proportional cost of the paving and place an extra concrete base, or foundation, under its tracks as required by the ordinance; and that it thereafterward made the necessary excavation along its tracks for such work, but did not put in the paving or have it done; that the city has had the remainder of the street paved. The prayer is that the receiver be ordered to have the paving put in, and, in the alternative, that the special assessment levied against the street railway company be recognized as a first lien, and that the city be paid out of the proceeds of the operation of the street railway, or out of the proceeds of the sale of the property, the amount of its lien, in preference to the bondholders and other creditors.

In answer to this intervention, the plaintiff, defendant and receiver of the railway company, alleged that the Amarillo Street Railway Company was insolvent; that it was then, and had been for several years, operating at a loss; that the pavement, if made, would not add to the value of the company's property, as the street railway was of no value as a going concern; that Amarillo had a population of between 15,000 and 18,000 inhabitants, which had increased some in the past few years, but, owing to the large number of automobiles, the income of the street railway company had not increased proportionately, but had rather fallen off, with no reasonable hope of any substantial increase; that it would be inequitable to force it to do the proposed paving; that the money necessary to borrow in order to do such paving could never be paid out of the earnings of the company, but only out of the proceeds of the sale of the property, and that the enforcement of such paving would amount to a confiscation and taking of its property without due process of law, in violation of the federal Constitution. It was further urged, as to the extra base to be put under the track, that no estimate of the cost was included in the assessment, and for this and other reasons it is not a valid lien; that the paving of the track has not been done, and therefore the lien has not been completed.

It appears that the original franchise for the construction of the street railway was granted in 1906 to Harris & Brock, who assigned it to the present company. The franchise provided that, whenever streets occupied by the tracks should thereafter be paved, the portion of the street occupied by the track, to the width of the length of the cross-ties, should be supplied by Harris & Brock, their successors and assigns, with paving material of uniform quality and depth with the rest of the street. Later, in 1910, in an ordinance, accepted by the company, extending the life of the franchise from 25 to 40 years, this provision of the original franchise was again recited as one of the considerations for the extension of the franchise.

With the consent of all parties, the court appointed a special master "to hear evidence and seasonably make his report thereon." Over the protest of plaintiff, the evidence took a wide range, going into the question of the organization of the defendant corporation and the legality of the bonds sued on. The master found that the company had been originally incorporated with a capital stock of $250,000, of which amount the stockholders paid in only $45,000, and that certain of the stockholders had advanced approximately. $60,000 to the corporation; but it was not clear as to whether this $60,000 was

in payment of stock subscribed, or a loan by the stockholders, as contended by the plaintiff. His finding was that stock was subsequently issued for the $60,000, and that the stockholders who advanced the amount were given the company's notes, and subsequently $98,500 in bonds, and that this $98,500 of an issue of $125,000 was all of the bonds disposed of by the company; that in 1913 the original owners of the stock of the railway contracted to sell the stock and physical properties of the company to Henry L. Daugherty & Co. for $150,000, free of all debts, and, in compliance with the contract, the $98,500 of bonds were paid off and taken up, but not canceled, and delivered to Henry L. Daugherty & Co.; that Daugherty & Co. transferred the bonds to the Cities Service Company, which, in turn, in anticipation of the paving, transferred them to G. Gordon Brownell, which latter transfer was a simulation, made for the purpose of foreclosing the mortgage, and that said bonds are not a debt of the street railway company; that the city of Amarillo never levied an assessment against the street railway for the costs of the extra eight-inch subbase, and therefore has no lien for same, but that the ordinance making assessments for street paving proper, aggregating $6,050, was duly passed, and the city had a valid lien to cover same; that but for the lease of a suburban park, no longer used, for $4,000 per annum, the company would have paid operating expenses.

The master stated that it did not appear that the company had been paid for all of the $212,000 of the capital stock reported to the Secretary of State for the years 1913, 1914, and 1915, and recommended that the receiver be instructed to investigate how much of the capital stock had been paid for, and by whom and in what manner.

The plaintiff, the defendant, and the receiver excepted to the report of the master on the ground that, under the order appointing him, he was not authorized to make any findings of fact or conclusions of law, but simply to take the evidence and report same, and they therefore prayed that such findings of fact and conclusions of law be stricken out. In the alternative, plaintiff excepted specifically to practically all of the findings of the master.

The city of Amarillo filed an amendment to its intervention after the report of the master, denying that the plaintiff had ever sold its bonds in the amount of $125,000, and denying that it had ever been paid anything for the bonds sued on, also denying that Brownell was the bona fide purchaser of such bonds for value, and that defendant company owes the bonds, or the interest thereon, which amendment plaintiff has moved to strike out.

Under an order of the court, the receiver temporarily filled in with gravel the excavated space between the rails.

The receiver, after the hearing, filed a petition praying that the street railway company and all physical properties of the company be sold, for the reason that the company was absolutely insolvent, and was being operated at a loss, its actual operating expenses, not including interest on its indebtedness, exceeding its revenue by about $138 a month. He also filed an application for leave to stop the operation of the company's cars.

M. Cammack, of Amarillo, Tex., and Frueauff, Robinson & Sloan, of New York City, for the plaintiff.

Thomas F. Turner, of Amarillo, Tex., for defendant and receiver.

Kimbrough, Underwood & Jackson, of Amarillo, Tex., for intervener, City of Amarillo.

JACK, District Judge (after stating the facts as above). The order appointing the master did not in terms provide that he should report his findings of fact and conclusions of law, but he was authorized to "hear evidence and seasonably make his report thereon," and it was evidently so understood at the time by the parties themselves, as evidenced by the fact that at the beginning of the taking of the evidence the master, when asked by counsel for the receiver as to whether or

not the documents filed should be copied into the record, replied that the transcript should contain sufficient data to show what his findings were based on; that the original documents might go up with the transcript, but that he wanted the record "full enough to show that his findings have some basis in the evidence." Again, later in the examination, when adjourning to await the production of certain documents, the master announced that he wanted definite data for definite findings, if he could get it. Although counsel thus had notice that the master would make findings; no objection was made to his authority to do so, nor was any objection made until the master's report was filed.

[1] It is well settled that, where a master is appointed with the consent of all parties to hear evidence and report his findings of fact, such findings of fact are conclusive, unless unsupported by any legal evidence or contrary to all the evidence, and that only the master's conclusions of law, under the circumstances, are reviewable on exceptions. Hattiesburg Lumber Co. v. Herrick, 212 Fed. 834, 129 C. C. A. 288. This rule, however, based on the prior consent of all parties, cannot be extended to cover findings of fact on issues not at the time made by the pleadings.

The answer of the defendant admitted all of the allegations of plaintiff's bill, and the petition of intervention made no attack on the validity of the plaintiff's claim, but merely asserted the superior right of the city. Therefore the findings of the master, in so far as they relate to the bonded indebtedness of the plaintiff company, the amount of its capital stock subscribed and paid in, and the validity of the claim of plaintiff, should be stricken out.

As stated by the master, the record is very confusing as to the nature of the purchase by Daugherty & Co. In a general way, it was testified that Daugherty & Co. bought the bonds, stock, and physical properties, but no deed from the company of its physical properties was produced. Nobles, one of the chief original stockholders, first testified that the bonds were paid when the property was sold; but later, after refreshing his memory and examining the books of the company, he testified that the bonds themselves were sold, and, as a matter of fact, they have never been canceled, which of itself tends to negative the idea of payment.

The defendant company is the same corporation that it was then and it apparently still owns its railway. The reasonable conclusion from the testimony is that the stockholders, who were likewise bondholders, sold Daugherty & Co. the stock and bonds, and, indirectly, they thus acquired control of its physical properties. I am therefore of the opinion that the bonds outstanding, to the amount of $98,500, are binding obligations of the company. Really, however, the matter is of little importance, for the reason that the Daugherty interests own all the stock of the railway company, and also own, or did own, the bonds—if they are in fact valid existing obligations—as well as practically all other outstanding indebtedness due by the railway company. The city has no interest to contest plaintiff's claim, which is admitted by defendant, because, if established, it is secured by a lien of superior rank to the mortgage indebtedness.

No objection was made to the master's finding that the cost of the extra subbase was not included in the assessment, and that the city therefore has no lien for same. Thus, the only claim now urged by the city is its lien for the paving of the space occupied by the track, with material of the same character and to the same uniform depth as that used in the paving of the remainder of the street.

[2] The receiver, the plaintiff, and the defendant, in opposition to the claim of the city, urge that the paving ordinance of the city is unconstitutional, because it requires the paving to be done by the street railway company, and no provision is made by which the city may either waive the requirement of the company, or lessen the cost of it, even though the assessment should operate unjustly to the company, and that the street railway company, being insolvent, could obtain no benefit from the paving, and the burden imposed would therefore be unreasonable and unwarranted.

Counsel further urges that the charter of the city of Amarillo, in effect at the time the franchise was granted to the street railway company, provided for an assessment of three-fourths of the cost of street paving against the abutting property on the front-foot plan, unless, in the opinion of the city commission, such rule should operate unjustly in particular cases; but that no such exception was made in the charter as to the assessment against the street railway company, which was arbitrarily required by the charter to pave the entire space between the rails and for two feet beyond. As this provision, however, was in the charter at the time the franchise was granted and accepted, the street railway company has now no cause for complaint. Not only was this provision in the city charter, but the street railway company expressly and specifically assumed this obligation by the very terms of its franchise and by the terms of the ordinance extending the life of the franchise. It did not have to accept the franchise, nor the subsequent extension, but, when it did do so, the above-quoted provision of the city charter, and the paving provisions of the ordinances granting and extending the franchise, respectively, became valid and binding obligations.

In the work of Paige & Jones on Taxation by Assessment, par. 599, the law is thus stated:

"The charter offered to a street railway company operating its cars on the surface often requires such company to pave between its tracks, and in some cases for a certain distance on either side. If the street railway company accepts and acts under such charter, it is bound to pave, or pay the cost of paving as so provided." Citing Worcester v. Worcester Consl. St. Ry. Co., 196 U. S. 539, 25 Sup. Ct. 327, 49 L. Ed. 591, affirming City of Worcester v. Worcester Consl. St. Ry. Co., 182 Mass. 49, 64 N. E. 581; New Orleans City & Lake R. R. Co. v. La. ex rel. City of New Orleans, 157 U. S. 219, 15 Sup. Ct. 581, 39 L. Ed. 679; State ex rel. City of New Orleans v. New Orleans, C. & L. R. Co., 42 La. Ann. 550, 7 South. 606; Sioux City St. Ry. Co. v. Sioux City, 138 U. S. 98, 11 Sup. Ct. 226, 34 L. Ed. 898; Springfield v. Springfield St. Ry. Co., 182 Mass. 41, 64 N. E. 577; City of Benton Harbor v. St. Joseph & Benton Harbor Street Ry. Co., 102 Mich. 386, 60 N. W. 785, 26 L. R. A. 245, 47 Am. St. Rep. 553; City of Rochester v. Rochester St. Ry. Co., 182 N. Y. 99, 74 N. E. 953, 70 L. R. A. 773; Storrie v. Houston St. Ry. Co., 92 Tex. 129, 46 S. W. 796, 44 L. R. A. 716.

Furthermore, it is well settled that a city, independent of such charter provisions, may stipulate in a franchise granted a street railway company a provision that the company shall pave the part of the street on which its tracks are located at its own expense, or pay for such pavement if done by the city, and such a provision, when a franchise is accepted, becomes a binding contract between the city and the railway company. Washington & Georgetown Railway Co. v. District of Columbia, 108 U. S. 522, 2 Sup. Ct. 865, 27 L. Ed. 807; Chicago v. Sheldon, 76 U. S. (9 Wall.) 50, 19 L. Ed. 594; Perine v. Forbush, 97 Cal. 305, 32 Pac. 226; Schmidt v. Market Street, etc., 90 Cal. 37, 27 Pac. 61; New Haven v. Fairhaven, etc., 38 Conn. 422, 9 Am. Rep. 399; West Chicago Railroad Co. v. Chicago, 178 Ill. 339, 53 N. E. 112; State ex rel. Keith v. Common Council of Michigan City, 138 Ind. 455, 37 N. E. 1041; Marshalltown, etc., v. Marshalltown, 127 Iowa, 637, 103 N. W. 1005.

The consideration for such a contract may be the granting of the franchise or the extension of one previously granted, as was the case in West Chicago Street Railway Co. v. Chicago, 178 Ill. 339, 53 N. E. 112. The acceptance of such a franchise completes the contract.

The defendant's contention that the assessment against it for street paving was invalid for the reason that it was insolvent, that it was operating at a loss, and its tracks would have to be torn up and sold, and that it could, therefore, receive no corresponding benefit, is not sound.

[3] The company's liability is independent of the paving statute authorizing special assessments for local benefits. It rests on the contractual obligation of the company, and the many cases cited by learned counsel holding that assessments made without regard to special benefit are violative of the Constitution have no application.

[4] As the company is insolvent, the only parties really in interest are the city of Amarillo and the plaintiff. The latter acquired the bonds sued on subject to the paramount right of the city under its contract, and has no cause for complaint now that the city insists on a strict compliance with that contract. The insolvency of the defendant corporation does not release it from its obligations. If it made a bad contract, like an individual it must suffer the consequences.

Counsel cite a number of cases holding that mandamus will not issue to force a street railway company to perform a public duty where it has not and cannot obtain the funds necessary to do the same. This is very true. The courts will not do a vain thing. Mandamus is not the proper remedy; but there is nothing in the cases cited to warrant the conclusion that the railway company is therefore released from such obligation. The obligation nevertheless continues to exist, and it is only a question of the city's remedy.

[5] Finally, it is urged that the city has never matured its lien by completing its paving of a portion of the street occupied by its track, and that, if it has any remedy, it is in a suit for the cost of the paving after the same shall have been put down by the city. It was the duty, as we have seen, of the street railway company itself to put down the paving instead of merely filling in the excavation with loose gravel pending the termination of this litigation. The paving was not done

by the city because of this very receivership and the demand herein urged that the receiver be ordered to have the work done. The court, under these circumstances, will order the street railway, and all of the properties, assets, and franchises of the street railway company, sold to pay and satisfy the mortgage bonds sued on, to the extent of $98,-500, with interest and costs, with a recognition of the prior lien of the city of Amarillo to the amount of its claim, $6,050, that amount to be held out of the proceeds of the sale to be paid to the city on completion of the paving. In the meantime the request of the receiver to stop the operation of the cars is denied.

[6] The receiver and plaintiff have not asked that the franchise be sold, believing the same of no value, and taking it for granted that the purchaser would prefer to tear up the tracks. It is by no means certain, however, that such a course would be thought advisable by the purchaser, despite the fact that the railway is now being operated at a loss. It might be considered good business to continue to operate notwithstanding present losses, taking chances on making a good profit with the future growth of the city.

Pretermitting, at this time, any discussion of the right of the city to demand that the purchaser at such sale continue to operate the cars in compliance with the defendant company's franchise obligations, the sale of the properties and franchises is ordered to be made without prejudice to such right as the city may have in the premises.